PORTER, APPELLEE, *v.* PORTER, APPELLANT.

124

(No. 69-632—Decided February 24, 1971.)

*Mr. Richard E. Bridwell,* prosecuting attorney, and *Mr. Joseph A. Gormley,* for appellee.

*Messrs. Graham & Graham, Mr. John C. Graham* and *Mr. Edward T. O'Rourke,* for appellant.

SCHNEIDER, J. In this case, a "roving" mother contends that we should affirm the judgment of the Court of Appeals for the reason that a father has an absolute duty to support his children under the Uniform Reciprocal Enforcement of Support Act. That position is unsupported by either Ohio statutory or decisional law.

R. C. 3115.03 (a part of Ohio's Support Act), reads: "Duties of support enforceable in accordance with Sections 3115.01 to 3115.22, inclusive, of the Revised Code,

are those *imposed by the laws of any state where the alleged obligor was present during the period for which support was sought.* The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

"*The duty of support imposed by the laws of this state* or by the laws of the state where the obligee was present when the failure to support commenced as provided in this section and the remedies provided for enforcement thereof, including any penalty, bind the obligor regardless of the presence or residence of the obligee." (Emphasis supplied.)

As stated in the syllabus of *Levi* v. *Levi* (1960), 170 Ohio St. 533: "The Uniform Reciprocal Enforcement of Support Act . . . is a measure designed to afford a practical method, in addition to other remedies, to enforce the legal obligation to support a dependent or dependents by *one who has left the state* in which the dependents reside. . . ." (Emphasis supplied.)

See, also, *Skinner* v. *Fasciano* (1956), 75 Ohio Law Abs. 409, in which the court, through Judge Skeel, held that:

"The purpose of the Support of Dependents Act is to enforce the civil liability against one who is in default of his obligation of support imposed by law *and who has left the jurisdiction of the state* where those who are entitled to the support reside, thereby obviating the necessity of subjecting the one charged with default of such support of being arrested and extradited to the jurisdiction of the default under the criminal law." (Emphasis supplied.)

Although in the instant case it was the wife, rather than the husband, who left the state, we do not understand that the latter is, by reason of that circumstance, entirely relieved from his obligation to his children. Rather, he is to be held to that duty of support delineated by the law of Ohio where he was, and is now, present. What, then, is the law of Ohio in this regard?

R. C. 3103.02 provides: "The husband is the head of

the family. He may choose any reasonable place or mode of living and the wife must conform thereto."

In the case of *In re Poage* (1912), 87 Ohio St. 72, at page 84, it was stated:

". . . This statute [the predecessor of R. C. 3103.02] means something, and all other legislation must be construed in the light of the rights, duties and authority of a husband so fixed and established by this law. If this defendant resided in Ohio, and if he had established a home for his wife and minor children, and his wife without any just cause therefor, and without his consent, and against his wishes and desires, abandoned his home, taking with her their minor children and refusing to permit them to return to the father and to the home provided by him for them, it is difficult to see how the father by mere neglect and failure to assert his legal right to the custody of his child or children would be guilty of an offense under . . . [R. C. 3113.01, defining the offense of failure to provide for a minor child] so long as the minor child is receiving from the mother, or from some other person at the request of the mother, all that a father is required to provide for it . . . ." See, also, *Buliox* v. *Buliox* (1962), 90 Ohio Law Abs. 251.

Similarly, it would seem that a wife who has breached her duty to conform to her husband's place of living may not claim the benefit of R. C. 3103.03, which imposes upon a husband the absolute duty to support his wife and family.

In *Fulton* v. *Fulton* (1895), 52 Ohio St. 229, 241, this court held that where a divorce had been granted on the aggression of the wife, and the minor children of the couple were assigned to her custody, "she should be held, as to them, to assume the obligations incident to that custody. *If, under these circumstances, where her own misconduct has destroyed the family relation, and deprived the father of the custody and society of his children, she has in fact maintained her children, she has no claim, legal or moral, to demand reimbursement from the father.* She has simply discharged her duty cast upon her by the plain-

est principles of natural justice, for the reason that necessity for it arose from her own misconduct.'' (Emphasis supplied.) Accord: *Douglas* v. *Douglas* (1901), 64 Ohio St. 605.

We reaffirm that long-standing policy. The primary reason for visitation is the benefit to be derived by the child from associating with his parents. *Block* v. *Block* (1961), 15 Wis. 2d 291, 112 N. W. 2d 923, 927. Cf. *Cavalleri* v. *Cavalleri*, 250 N. Y. Supp. 2d 476.

Moreover, the right to visitation may in certain circumstances be more valuable to the child than additional monetary support. Where a mother whose own misconduct has destroyed the family relation is able to discharge her duty to support the children there may be more need for the protection and nurture a father can give his children through regular visits than for financial maintenance.

We, therefore, recognize that the need of a child for visitation with a separated parent is a natural right of the child and is as worthy of protection as is the parent's right of visitation with the child. Thus, the failure, without just cause, of a divorced or separated parent having custody of a child to accord visitation rights to the other parent is not only an infringment of the other parent's right to visitation but is also an infringement of the child's right to receive the love, affection, training and companionship of the parent.

In this case, we find no default of an obligation on the part of the defendant. He did not leave the jurisdiction where those entitled to his support resided. On the contrary, he was abandoned, and was granted a divorce on the aggression of his wife. Plaintiff and the children were living at the legal domicile of the family and there was no cause shown which would justify her extreme conduct in removing the children from the state.

It is important at this point to distinguish the situation here from one wherein the parents are separated but the children are not removed from the state, in which latter case, the respective duties of support on the one hand and

of according visitation to the other parent on the other are not interdependent for the reason that they may, and should, be separately enforced.

Therefore, the correct rule of law applicable to this case is that where a father and his children have been deprived of their rights of visitation with each other by the mother's removal of the children from this state without the father's consent, the trial court may condition the father's duty to support the children upon the mother's compliance with reasonable visitation privileges, unless the mother is unable fully to support the children; or they are wanting for proper care and by reason thereof they are about to become public charges. Accord: *Levell* v. *Levell* (1948), 183 Ore. 39, 190 P. 2d 527; *State, ex rel. Shannon,* v. *Sterling* (1956), 248 Minn. 266, 80 N. W. 2d 13.

In a case brought under the Uniform Reciprocal Support Act having a similar fact situation, the New Jersey Supreme Court affirmed a lower court opinion which stated:

"One of the devices used by the courts to give effectiveness to a father's visitation rights, where the children have been taken out of the state by a mother to a place so distant as in effect to destroy such rights, is to reduce, discontinue or suspend an existing order for the support of the children until the children are returned or until in some other fashion the father's visitation rights can be fully protected." *Daly* v. *Daly* (1956), 39 N. J. Sup. 117, 120 A. 2d 510, affirmed, 21 N. J. 599, 123 A. 2d 3. Accord: Annotation, 95 A. L. R. 2d 118, 147, Section 8; *Goldner* v. *Goldner* (1954), 284 App. Div. 961, 135 N. Y. Supp. 2d 337, affirmed, 309 N. Y. 675, 128 N. E. 2d 321; *Eberhart* v. *Eberhart* (1922), 153 Minn. 66, 189 N. W. 592; *Crawford* v. *Crawford* (1959), 19 Misc. 2d 633; *Karrass* v. *Karrass* (1946), 66 N. Y. Supp. 2d 919; *Meyers* v. *Meyers* (1910), 161 Mich. 487, 126 N. W. 841; *Myers* v. *Myers* (1906), 143 Mich. 32, 106 N. W. 402. See, also, 24 American Jurisprudence 2d 910 *et seq.* and 966, *Divorce and Separation,* Section 801 *et seq.* and Section 851. *Gilman* v. *Gilman* (1951), 327 Mass. 143, 97 N. E. 2d 404; *Hardy* v. *Hardy* (Fla. App. 1960),

118 So. 2d 106; *Cortina* v. *Cortina* (Fla. App. 1958), 108 So. 2d 63.

*Bowen* v. *State* (1897), 56 Ohio St. 235, is readily distinguishable. There it was stated that the duty of child support is owed by the parent to the state as well as to the child, and the parent "has no more right to allow them to become a public charge then he has to allow them to suffer for want of proper care and substance." See, also, *Fulton* v. *Fulton, supra* (52 Ohio St. 229), at page 240 and 241. In the case at bar, there is no allegation that the children are about to become public charges or that they are wanting for proper care.

The Court of Common Pleas, therefore, did not abuse its discretion in denying the plaintiff's request to order that the defendant unconditionally pay child support under the Ohio Uniform Reciprocal Enforcement of Support Act.

The judgment of the Court of Appeals is, therefore, reversed, and remanded to the Court of Common Pleas for further proceedings consistent with the opinion.

*Judgment reversed.*

HERBERT, DUNCAN, STERN and LEACH, JJ., concur.

CORRIGAN, J., concurs in paragraphs one and three of the syllabus but dissents from the judgment.

O'NEILL, C. J., concurs in paragraphs three and four of the syllabus but dissents from the judgment.

HERBERT, J., concurring. A point not reached by the majority opinion concerns the practical likelihood that a spouse of average means could find it impossible regularly to travel significant distances to reach his children. Should such circumstances bear upon the reasonableness of visitation privileges ordered in cases of this nature?