FOSTER, APPELLEE, *v.* FOSTER, APPELLANT.

[Cite as Foster v. Foster (1974), 40 Ohio App. 2d 257.]

(No. 73AP-379—Decided April 16, 1974.)

*Robins, Preston & Beckett Co., L. P. A.,* and *Mr. John A. Sentz, Jr.,* of counsel, for appellee.

*Messrs. Maugan, Vacca & Braun,* for appellant.

WHITESIDE, J. This is an appeal from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, suspending the child support payments to be made by plaintiff for the support of his minor children "until such time as the plaintiff can exercise his visitation."

A complaint for divorce was filed by plaintiff on January 22, 1971. Subsequently, defendant filed a cross-complaint. Defendant was granted a divorce upon the cross-complaint by a judgment entry of January 12, 1972, and the decree incorporated a separation agreement requiring plaintiff to pay $325 per month support for the parties' two minor daughters, aged, approximately, 15 and 8.

Thereafter, a motion was filed by defendant for a finding of contempt against plaintiff for failure to pay the child support. After the motion was filed, plaintiff filed a motion for termination of support payments upon the grounds that he had been denied visitation rights. The referee made a recommendation for a partial suspension of support payments until plaintiff is granted visitation rights. At the same time, the referee found plaintiff in contempt for failing to make payments ordered by the court on an arrearage. By its judgment order, entered May 25, 1972, the trial court adopted the recommendation of the referee with respect to finding plaintiff in contempt, but rejected the recommendation of the referee with regard to the suspension of child support payments.

On July 18, 1972, plaintiff filed a second motion seeking to suspend child support payments because of the alleged denial of his visitation privileges. Shortly thereafter, another motion for contempt was filed by defendant because of plaintiff's failure to make child support payments, as was a motion for an order to terminate the visitation rights of plaintiff with the parties' children. These matters were again heard by a referee who recommended denial of relief to all parties. Both parties filed objections to the report of the referee. On December 19, 1972, the trial court rendered a decision adopting the report of the referee which was journalized by an order entered on January 31,

1973. In the interim, on January 5, 1973, plaintiff filed a third motion seeking the same relief—namely, the suspension or modification of child support payments until he is able to exercise his visiting privileges with the minor children of the parties.

This matter was heard on February 9, 1973, before the same referee who had heard the previous matters, and who again recommended suspension of support payments. Objections to the report were filed, but were overruled by the trial court, and the report of the referee was adopted. (The objections were filed to a report mailed to counsel for defendant on May 31, 1973, but no such report is found in the record. Findings of fact and conclusions of law were entered by the referee on August 22, 1973, the same date that a hand-written decision of the trial court overruling objections to such was entered. We assume this constitutes the report of the referee which was adopted by the trial court.) Defendant appeals and raises assignments of error divided into two basic parts, but consisting of nine branches as follows:

"I. The court erred in overruling the objections of defendant-appellant to the report of the referee of May 31, 1973, and in adopting and approving said report in its entirety for the following reasons, to-wit:

"(1) The findings of fact, approved by the court, are not sustained by the evidence and are against the manifest weight of the evidence and contrary to law.

"(2) The court and the referee erred in admitting and considering incompetent evidence over the objections of this party.

"(3) The finding of the referee, and approved by the court, that the plaintiff-appellee has been continuously and repeatedly prevented from exercising his rights to visitation, established by an order of the court, is contrary to law and contrary to evidence.

"(4) The finding of the referee that the defendant-appellant has been responsible for the interference with the visitation rights of the plaintiff-appellee, and approved by the court, is contrary to the manifest weight of evidence,

but there is abundant testimony that the defendant-appellant has made every effort to get the children to go with their father, and the defendant-appellant has never denied the plaintiff-appellee his rights of visitation. See page 6 of the record and the entire testimony of the defendant-appellant, appearing on pages 8 through 15, inclusive, and pages 48 through 59, inclusive, of the record.

"(5) The referee and the court erred in rejecting the testimony of Debra Foster, daughter of the defendant-appellant and plaintiff-appellee, appearing on pages 59 through 73 of the transcript of proceedings of February 9, 1973; wherein, she gives her reasons for terminating the rights of visitation with her father, the plaintiff-appellee in this case. The report of the referee should be rejected in its entirety, and the motion of the plaintiff-appellee, to suspend or terminate child support payments, should be overruled.

"(6) The court erred in adopting the report of the referee in incorporating in his findings of fact and conclusions of law, made in his report of May 31, 1973, basing his findings of fact on the transcripts of the proceedings of two previous hearings, which were decided in favor of the defendant-appellant, the tendency of which has the effect of reversing previous orders made in favor of the defendant-appellant, and on the proceedings of February 9, 1973, as the plaintiff-appellee is limited, in the February 9, 1973 hearing, to facts which occurred after August 29, 1972.

"(7) The court erred in adopting the ruling of the referee in not ruling on the motion of the defendant-appellant to make an order, ordering plaintiff-appellee and the children to submit to a psychiatric examination to ascertain the nature of the problem between the plaintiff-appellee and his children, contrary to Civil Rule 35.

"II. The court erred in adopting the referee's report, in sustaining the motion of plaintiff-appellee of suspending child support payments until such time as the plaintiff-appellee can exercise his visitation, for the following reasons, to-wit:

"(1) The court and the referee erred in terminating all child support payments, effective February 9, 1973, until the plaintiff-appellee is afforded regular visitation. Such a sweeping order is oppressive to the defendant-appellant and is not contemplated by Section 3109.05 for the reason that the effect of said order is to make these children public charges and placing them with Welfare when the father is financially able to support said children, and said order constitutes a gross abuse of discretion, on the part of the court, and is not for the welfare of these children.

"(2) The court and the referee erred in applying the provision of Section 3109.05 of the Revised Code of Ohio, for the reason that said section is unconstitutional as it impairs the obligation of the contract made by the parties in the divorce decree, entered on January 12, 1972; wherein, the parties expressly agreed with each other in paragraph 3, subparagraph 1, of the divorce decree respecting custody of the children and child support. Section 3109.05 is also unconstitutional in that it is in direct conflict with Section 3103.03, and the ruling of the referee relieves the husband of his primary responsibility of support and has a tendency of shifting his burden to the tax-payers of Ohio, contrary to the provision of Section 3103.03 of the Revised Code of Ohio."

The record clearly indicates that the parties' fifteen-year-old daughter did not want to visit her father at any time. The evidence overwhelmingly indicates that the source of the visitation problem was the attitude of this girl towards her father. Both plaintiff and defendant so testified. The girl also so testified on three separate occasions—March 10, 1972, August 29, 1972, and February 9, 1973.

At the conclusion of the March 10, 1972, hearing, the referee stated:

"* * * It appears that if Deborah does not want to visit with her father and Mrs. Foster does not feel that she can force her to visit with her father I frankly see no reason why he should continue to be a meal ticket for that

child and simply support her and let her say she is not going to see him, doesn't want to see him, and is denying, in effect, that she has got a father at all.''

The hearings in this matter clearly indicate that the problem was the attitude of plaintiff's daughter towards him, and the issue was whether or not he should be required to support that daughter, as well as the younger daughter. The daughter on each occasion testified that she was afraid of her father because he was a violent man. Also, in the March 1972 and February 1973 hearings, she testified that he was a poor driver, almost had traffic accidents, and that she was afraid to ride with him.

The judgment entry granting the decree of divorce and establishing custody and visitation rights was entered by the trial court on January 12, 1972, although it appears that the hearing was held and the decision of the court rendered on November 18, 1971. Alimony, child support, and property rights were based upon an agreement between the parties which was incorporated into the decree. With respect to child support, the agreement, as incorporated in the decree, provides that, effective November 18, 1971, plaintiff shall pay to defendant the sum of $325 per month as follows:

''* * * for the support, care and maintenance of said children, and said payments shall continue * * *until said children are of legal age, or emancipated or have completed a four-year college education, whichever occurs later. * * * Child support payments are subject to modification, due to change of circumstances.''

With respect to visitation rights, the agreement, as incorporated into the decree, provides:

''The plaintiff is granted visitation rights with his children on alternate weekends from Saturday, 1:00 o'clock p. m. through Sunday 7:00 o'clock p. m., commencing on the weekend of November 27, 1971, and every other alternate weekend as aforesaid. The plaintiff is further granted additional visitation rights with the aforesaid children for a period of two weeks during school vacation, as the parties may agree,''

Plaintiff's testimony at the August 29, 1972, hearing indicates that he made no effort to exercise the full visitation rights until Saturday, May 27, 1972, twelve days after the announcement by the trial court of its decision rejecting the report of the referee and overruling plaintiff's motion for termination of support payments, partially upon the grounds that plaintiff had made no effort to exercise his visitation rights fully. Plaintiff's testimony further indicates that he had on numerous, but not all, alternate weekends attempted to visit with his children at 11 a. m. on Sunday but that the last time that he had been successful in so doing was in March 1972. On the other occasions, one of the girls, usually the youngest, would appear at the door and tell him they did not want to visit with him. While conceding that the children had told plaintiff on several occasions that they did not wish to visit with him, defendant and the older daughter both testified that plaintiff had attempted visitation on fewer occasions than he insisted; however, he did testify that, on some occasions, no one was at home when he appeared.

Most interesting is the evidence concerning an abortive effort at providing the two-week vacation period, to which plaintiff is entitled pursuant to the decree, in August 1972. The evidence is undisputed that arrangements were made for such period to begin at 11 a. m. Monday, August 7, 1972, and that defendant agreed thereto. Plaintiff testified that he came to the house both at 1 p. m., Saturday, August 5, 1972, for his regular visitation, and at 11 a. m., Monday, August 7, 1972, and that no one was home on either occasion. The evidence presented by defendant, however, overwhelmingly indicated to the contrary; namely, that plaintiff never appeared at the home to pick up the girls for the two-week vacation, causing defendant to cancel airplane reservations for a trip to visit relatives, which she had planned.

The findings of the referee, adopted by the trial court, necessarily require a finding that plaintiff failed to exercise his right to the two-week vacation by not picking up the two daughters, as the evidence manifestly indicates.

This brings the situation to the present motion, which was filed immediately following the decision of the trial court confirming the report of the referee following the August 1972 hearing denying defendant's second motion to terminate visitation rights.

A hearing thereon was held on February 9, 1973. Again the evidence was conflicting as to attempts by plaintiff to exercise visitation rights with his testimony being that he attempted and was told by one or the other of his daughters that they did not wish to go with him, and the testimony being from the others that, while this was true on some occasions, on other occasions, and especially the Thanksgiving weekend, he did not even appear. Plaintiff admitted that he attempted no visitation with his children between November 25, 1972 (an occasion as to which other witnesses testified he did not appear for the visitation), and January 20, 1973. In between, plaintiff admitted receiving a letter from defendant, dated January 11, 1973, stating that he did not appear for the November 25 weekend visitation and advising him: "The children are ready to visit with you in accordance with the date and time as stipulated in the divorce decree." On January 20, 1973, plaintiff did appear at defendant's residence, and the children did get in the car with him, and he started on the way to Wooster, where he lived.

Plaintiff testified that en route the older daughter indicated that she wished to take a book out of the Ohio State library, and that he took her there after about half an hour; she went in, returned in about ten minutes, opened the car door, said she didn't want to go, and called the other daughter out of the car and went back up the steps to the library. As to the Saturday, a fortnight later, the evidence clearly indicates that the older daughter played the lead in a high school play.

As to the January 20, 1973, abortive visitation, plaintiff testified that the older daughter did not want to go, but did go. He further testified in response to a question as to whether he and the children had any argument that day, as follows: "Deborah was very upset and she didn't want

to speak to me. She just sat in the car, upset and she really didn't want to go. Her attitude was very poor. Kim, however, did want to go and she had a very nice attitude."

The older daughter testified that she was afraid of her father and that he drove erratically and that was why she stopped the visitation, stating specifically: "I got frightened because of all his driving habits and things like that, and he looked kind of funny and I just got scared. I was scared, but I was forced to go. My mother forced me to go and so I went * * *."

Plaintiff denied the erratic driving, stating, at first: "* * *I do a lot of driving. I don't get any tickets * * *." Later, on cross-examination, when asked about receiving traffic tickets, plaintiff stated: "The last traffic ticket I received was quite a while ago. * * *" When asked whether he wanted to change his testimony, given on direct examination, that he hadn't received any traffic tickets, plaintiff stated: "This was quite a while ago. I have never been in an accident." Subsequently, when confronted with documentary evidence, plaintiff admitted that the "quite a while ago" was less than five months, September, 1972. On the other hand, the older daughter had previously testified that her father did not drive well and that she was afraid he would have a traffic accident and that "we've almost got in traffic accidents when we go with him."

The evidence is quite clear that plaintiff's daughters, especially the older daughter, affirmatively do not wish to have any visitation with him. In the findings of fact and conclusions of law filed by the referee on October 18, 1972, following the August 29, 1972, hearing, we find the following statement in paragraph 7: "* * * no visitation can be established in the foreseeable future * * *." Regardless of the reason for such conclusion, it is quite clear that the referee, after the second hearing on August 29, 1972, concluded that no visitation could be established and that finding was approved by the trial court. The only evidence of any change in circumstances thereafter was some effort on the part of defendant to convince the two daughters to visit with their father.

Plaintiff relies upon R. C. 3109.05 and *Porter* v. *Porter* (1971), 25 Ohio St. 2d 123. However, in the opinion by Justice Schneider, at pages 128, 129, we find the following:

"It is important at this point to distinguish the situation here from one wherein the parents are separated but the children are not removed from the state, in which latter case, the respective dulties of support on the one hand and of according visitation to the other parent on the other are not interdependent for the reason that they may, and should, be separately enforced."

Accordingly, *Porter* supports neither plaintiff's position nor the order of the trial court, but, rather, would require a contrary finding.

R. C. 3109.05 was amended subsequent to *Porter*, to include the following provision:

"The court may, upon notice and hearing, make such modification as it determines just in an order of support of a child or an award of alimony upon proof that the party subject to such order has been continuously or repeatedly prevented from exercising a right to visit such child established by an order of court. * * *"

We must first note the language of R. C. 3109.05, which provides that the court may "make such modification as it determines just in an order of support," but does not provide that the court may suspend an order of support as was done in this instance. The suspension of an order is not a modification thereof. The language of the statute referring to modification that is just, in an order of support, necessarily involves an evaluation of the need of the children for support against the right of the parent to visit with such child and a balancing of the equities involved. Such modification may not be exercised solely as an alternative means of enforcing the duty of the parent having custody to afford visitation to the other parent by an automatic termination of support if visitation is denied, without a finding that the children will not be deprived of necessaries as a result of such order. Here there is no finding as to the effect the order terminating support will have upon the welfare of the children. While the right of a par-

ent to visit with his child is an important right, it is the welfare of his child that is paramount.

While not repeated with regard to the last hearing and order, the referee, at the conclusion of the other two hearings, expressly stated that it was not necessary that defendant prevent plaintiff from exercising his visitation rights with the children, but evidence showing that the children themselves prevented visitation would be sufficient to justify a termination of support payments. The transcript of proceedings stated: "* * * frankly I would interpret that to mean if the children themselves repeatedly or continuously prevent the exercise of the right of visitation, this court would be perfectly justified in cutting off child support. * * *" R. C. 3109.05 is obviously directed primarily at the parent having custody of the children, as a means of enforcing visitation. Furthermore, as indicated above, R. C. 3109.05 does not provide for the automatic cutting off of support if visitation is prevented, but, rather, there must be a determination based upon evidence as to what modification of the ordered support is just. Here, an automatic cutoff of support is involved without any evidence or determination of what is just.

The authority vested in the court by R. C. 3109.05, in extreme circumstances, includes authority to give relief to a parent continuously or repeatedly prevented from exercising a right to visit a child because of the child's refusal to visit with him, by a just modification of an order of support. Such jurisdiction should not be exercised unless the court first considers whether to make the child a party to the action and considers the advisability of the appointment of a guardian ad litem for that child, pursuant to Civ. R. 75(B) (2). Obviously, under such circumstances, if it appears that the interests of the child call for representation at the hearing, as to whether that child should be supported by his parent, the application of Civ. R. 75(B)(2) would necessarily be in order. One important issue that appears when the child refuses to visit with a parent necessarily is whether the child is justified in such

refusal because of the conduct of the parent during past visitations.

In *Porter*, it was held that where a father and his children have been deprived of their right of visitation with each other by the mother's removal of the children from the state, a court may condition the father's duty to support the children upon the mother's compliance with rea sonable visitation privileges, unless the mother is unable fully to support the children. It would appear, from *Porter*, that under such situations it may well be the burden of the mother to raise the issue as to whether she is able to support the children.

However, under R. C. 3109.05, where the court determines that a father has been continuously or repeatedly prevented from exercising visitation rights with a child, the court may make only such modification in an order of support for that child as is just. Obviously, the prime consideration in determining a just modification is the need of the child for support and the source of such support, if not provided by the father. Here, there is no evidence as to any source of support other than the father. The record indicates that the mother is not employed. There is no evidence that she has any source of income other than the support and alimony payments required to be made by plaintiff.

Accordingly, assuming that the referee, without the children being made parties, was justified in finding that plaintiff had been continuously or repeatedly prevented from exercising his right of visitation with those children, and that R. C. 3109.05 may authorize a complete cutoff of support for children, there is no evidence whatsoever in the record before this court that would justify a finding that a cutoff of all support for plaintiff's two minor daughters is just. Neither is there a finding of fact or law by the referee that, under the circumstances herein, a suspension of child support payments is a just modification of the order of support. When defendant attempted to introduce evidence bearing upon the issue of her ability to support the children, the referee stated that he didn't see any relevancy of the evidence to the issues.

It might well be noted that plaintiff's only efforts since

the decree of divorce to enforce his right of visitation have been by means of motions to attempt to cease paying support for his children. Three successive motions have been filed in slightly more than a year. Relief was denied as to the first two, and upon the second occasion, as the referee comments in his most recent findings of fact: "* * * The facts seemed to indicate the plaintiff was simply going through the motions of visitation to secure additional evidence to support his position and not to visit with his children. * * *" It would appear to this court that a father who is genuinely interested in the welfare of his children, even though he is separated from them, and even though they refuse to visit with him, would primarily be concerned with whether or not they have adequate support. However, plaintiff has offered no evidence upon that issue.

We note further that the evidence indicates that plaintiff has not sent either a birthday or Hanukkah card to either of his daughters. Whether or not one believes her testimony, the elder daughter testified at the August 29 hearing that she felt that "My father doesn't love us or want us."

Turning now to a specific consideration of the assignments of error, assignments of error I(1) and II(1) are well taken for the reasons set forth above. Assignment of error I(2) is not well taken since defendant has not pointed out any prejudice resulting from the admission of any evidence over her objection. Assignment of error I(3) is not well taken in view of the fact that there is evidence, from which the referee and trial court could find that plaintiff had been continuously and repeatedly prevented from exercising his right of visitation with his daughters because his daughters did not wish to visit with him.

Assignment of error I(4) is well taken. There is not even a scintilla of evidence that defendant was responsible for any interference with plaintiff's visitation rights. To the contrary, all the direct evidence was specifically that defendant had made every effort to convince the children that they should visit with their father. Defendant so testified, as did the older daughter. Furthermore, plaintiff's testimony as to the attitude of his older daughter concern-

ing the abortive January 20, 1973, visitation is consistent only with a conclusion that she had done so reluctantly and had been persuaded to do so against her will.

Of course, the referee is permitted to disbelieve the testimony of any witness. Presumably, he could disbelieve the evidence of defendant's efforts to convince her daughters to visit with their father. If that were the case, however, such disbelief of the evidence before him would not justify a finding to the contrary, inasmuch as there was no evidence to support such a finding. Rather, a disbelief of the testimony before him would leave the referee in a position of having no evidence upon the issue. Obviously, the referee cannot properly make a finding based upon no evidence.

It is true that defendant previously testified that she had not, and would not force her daughters to go for a visitation with their father, although she had tried to convince them to do so. This is all that is required of her. She is not required to force her children to visit with their father when they strongly object to doing so, although defendant testified she had "forced them to go on certain occasions." Defendant's motivation in urging her children to visit with their father, possibly being only to avoid the very type of order that the referee recommended, is not a factor. Neither is past conduct justification for suspending support if the parent having custody is presently making an effort to afford visitation privileges to the other parent.

However, there is no evidence in the record of such past conduct, and the referee cannot consider any evidence not properly before him. The only evidence properly before the referee was the testimony adduced at the hearings upon the motions.

Based upon the evidence adduced at prior hearings, the referee specifically stated that the older daughter "controls the situation." In the findings of fact, filed October 18, 1972, the referee specifically found that "plaintiff has had no visitation with his minor daughters since March, 1972, *because of his daughters' refusal to see him.*" (Emphasis added.)

Assignment of error I(5) is not well taken, insofar as it contends that the court erred in rejecting the testimony of the daughter during the proceeding of February 9, 1973. While the phraseology of the finding by the referee is questionable, the referee is entitled to believe or disbelieve the testimony of any witness. We cannot say in this instance that not believing the daughter's testimony was an abuse of discretion.

Assignment of error I(6) is not well taken. Not only was there no error in considering the prior transcripts which were contained in the record, there was no prejudice resulting from such consideration. Rather, the consideration of the prior transcripts more clearly demonstrates the error that we have found in the proceedings of the referee and the trial court. Examining the prior transcripts, rather than having the evidence repeated at the subsequent hearings, was a proper method of bringing the entire background of the situation and the various motions before the court and referee.

Assignment of error I(7) is not well taken. We find no abuse of discretion in failing to sustain defendant's motion for a psychiatric examintion.

Assignment of error II(2) is also not well taken. We find that, when properly applied as we have indicated herein, there is no basis for holding R. C. 3109.05 to be unconstitutional as an impairment of the obligation of a contract. Neither is R. C. 3109.05, when properly applied, as indicated in this decision, in conflict with R. C. 3103.03.

For the foregoing reasons, assignments of error I(1), I(4), and II(1) are sustained, the remaining assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is reversed, and this cause is remanded to that court for further proceedings in accordance with this decision.

*Judgment reversed and remanded.*

HOLMES, J., concurs.
STRAUSBAUGH, J., concurs in part.

STRAUSBAUGH, J., concurring in part. There is evidence here to support a finding by the trial court that the plaintiff has been continuously and repeatedly prevented from exercising his right to visit his children as ordered by the trial court. There is no contention, or evidence that there is good cause to deny the father all visitation rights.

This court has previously stated, in *Walburn* v. *Walburn*, No. 72AP-88, Court of Appeals for Franklin County, rendered July 5, 1972 (1972 Decisions, page 1930):

"A parent's right of visitation with his child and the child's right of visitation by his parent is a right independent of any court order. While this right of visitation is not absolute, it will be denied only under extraordinary circumstances or where the parent seeking visitation rights is unfit. See annotation 88 A. L. R. 2d 151.

"The parent having custody of a minor child has a duty to accord visitation rights to the other parent whether or not there is a court order to that effect. This is the necessary conclusion from the third paragraph of the syllabus of *Porter* v. *Porter* (1971), 25 Ohio St. 2d 123, which states:

" 'The need of a child for visitation with a separated parent is a natural right of the child, and is as worthy of protection as is the parent's right of visitation with the child; thus, the failure, without just cause, of a divorced or separated parent having custody of a child to accord visitation rights to the other parent is not only an infringement of the other parent's right to visitation but is also an infringement of the child's right to receive the love, affection, training and companionship of the parent.' "

In my opinion, the trial court, in making "* * * such modification as it determines just in an order of support of a child * * *" may suspend an order of support entirely, if, for example, the other spouse is shown capable of total support. Here, there is neither evidence, nor a showing that the court heard evidence, bearing upon the source of support for the subject children. This determination is essential for the welfare of the children, as well as society in

general, to prevent the children from becoming dependant upon the state for their support.

This case should be remanded for the purpose of making this determination. Assignment of error II(1) should be partially sustained and the remaining assignments of error overruled.