PETTRY, APPELLEE, *v.* PETTRY, APPELLANT.

(No. 47896—Decided
November 19, 1984.)

*Jennifer Monroe,* for appellee.
*Cain & Cain* and *Elizabeth A. Cain,*
for appellant.

NAHRA, J. Following the divorce of Dennis Pettry, appellant, and Regina Pettry, now Regina Vilscek, appellee, on February 10, 1981, the trial court awarded custody of their two youngest children, Michael (born July 21, 1971) and Rodney (born August 7, 1972), to appellee and awarded custody of the oldest child, Dennis, Jr. (born August 20, 1969), to appellant. The trial court's order did not contain a visitation provision, but only provided communication rights for the noncustodial parent.

On September 17, 1982, appellant filed a motion to modify the court's order to include visitation privileges with his two younger sons. At the hearing on appellant's motion on November 7, 1983, appellant testified that he loved Michael and Rodney as he loves Dennis, Jr., that he has not harmed them, and that he wants only a few hours a week with his sons. Dennis, Jr. testified that he enjoys living with his father and that he gets along "good" with his father. He testified that his father helps him with his math and that he has won trophies playing on the baseball team that his father coaches. Dennis also told the court that Michael and Rodney told him that their mother would not allow them to visit with their father and that Rodney once said that he was afraid to. Finally, on behalf of appellant, the Reverend David Eubert, who has known the Pettrys for about eight years, testified that while visiting appellee, he heard her threaten to put Michael and Rodney back in a foster home if they visited their father.[1] Reverend Eubert could not think of any reason to deny appellant visitation privileges.

Appellee, who was not at the hearing but who was represented by counsel, did not cross-examine appellant or his witnesses. The only evidence presented by appellee was a written report containing a psychological evaluation of Michael and Rodney prepared by Sue White, a psychologist at Cleveland Metropolitan General Hospital, Child Mental Health Division. According to the report, White saw Michael and Rodney at intervals between May 24, 1983, and June 22, 1983.

Michael told White that before his parents' divorce, his father beat his mother, his brother Denny, and him. He said his father was mean and he hated him. The last time he saw his father was long ago, and he recalled his father threatened to hit him on that occasion. Michael told White he would run away if he had to visit his father. Michael sees his brother Denny occasionally and is concerned about Denny's welfare since Denny lives with his father. He believed Denny was not eating and was being whipped. White recommended that Michael be given his wish not to visit his father.

Rodney told White that living with his father was "terrible," but he could not recall any specific incidents. Rodney did not remember his father hitting him, but he did recall his father hitting his mother and Denny. Rodney said he

---

[1] Although not contained in the record of these proceedings, appellant stated in his brief that the children were placed in foster homes pending the divorce of the parties in 1977. The court granted split custody in 1981.

hated his father and he didn't feel his father loved Denny. White recommended that Rodney not visit his father as well if Rodney so chose.

After considering the testimony of appellant and his son, Denny, the evaluation prepared by White, and an unrecorded *in camera* conversation with Michael and Rodney held at a previous hearing, the court concluded that it would not be in the best interests of the children to see their father and overruled appellant's motion. Appellant timely appealed, raising the following assignment of error:

"The order which overrules Appellant's Motion to Modify Visitation, and which denies Appellant the right to visitation with his minor children, is Unreasonable, Contrary to Law, Against the Manifest Weight of the Evidence, and therefore constitutes an Abuse of Discretion by the Trial Court."

A noncustodial parent's right of visitation with his children is a natural right. *Porter* v. *Porter* (1971), 25 Ohio St. 2d 123 [54 O.O.2d 260]; see *Foster* v. *Foster* (1974), 40 Ohio App. 2d 257, 272 [69 O.O.2d 250] (Strausbaugh, J., concurring in part). As such, the right of visitation, albeit not absolute, should be denied only under extraordinary circumstances. *Foster, supra* at 272; accord *Sholty* v. *Sherrill* (1981), 129 Ariz. 458, 632 P. 2d 268; *Devine* v. *Devine* (1963), 213 Cal. App. 2d 549, 29 Cal. Rptr. 132; *In re Two Minor Children* (Del. 1961), 173 A. 2d 876; *Wilson* v. *Wilson* (1953), 73 Idaho 326, 252 P. 2d 197; *Willey* v. *Willey* (Iowa 1962), 115 N.W. 2d 833; *Radford* v. *Matczuk* (1960), 223 Md. 483, 164 A. 2d 904; *Syas* v. *Syas* (1948), 150 Neb. 533, 34 N.W. 2d 884; *Kresnicka* v. *Kresnicka* (1973), 42 App. Div. 2d 607, 345 N.Y. Supp. 2d 118; *Bussey* v. *Bussey* (1931), 148 Okla. 10, 296 P. 404; *Venable* v. *Venable* (1979), 273 S.C. 96, 254 S.E. 2d 309; *Slade* v. *Dennis* (Utah 1979), 594 P. 2d 898; *Block* v. *Block* (1961), 15 Wis. 2d 291, 112

N.W. 2d 584. Extraordinary circumstances would include, for example, the unfitness of the noncustodial parent, see *Foster, supra,* at 272, or a showing that visitation with the noncustodial parent would cause harm to the children, see *Smith* v. *Smith* (1980), 70 Ohio App. 2d 87 [24 O.O.3d 100]; see, generally, Annotation (1963), 88 A.L.R. 2d 148. The burden of proof is on the party contesting visitation privileges, and absent a showing of extraordinary circumstances, the trial court may fashion any just and reasonable visitation schedule. See R.C. 3109.05(B). In this regard, the California Court of Appeals for the Second District stated that:

"Because of the importance of the parent-child relationship and the likely benefits to the child as it grows up from reasonable (and, where necessary, supervised or restricted) visits with the parent who does not have custody, the courts should not deprive such a parent of all visitation privileges absent a clear showing that any contact with such parent would be detrimental to the child. It would follow that any diminution of visitation privileges * * * should be no greater than necessary to serve the best interests of the child. Where it is possible to serve such interests by an order providing for less than full deprivation of visitation privileges, the court should make such an order and no more." *Devine, supra,* at 553.

Some courts have held that if a child is actually unwilling to see the noncustodial parent and no useful purpose would be served by forcing visitation, visitation privileges may be denied. See, *e.g., Lieblich* v. *Lieblich* (1957), 18 Misc. 2d 798, 164 N.Y. Supp.2d 179. However, if the child's unwillingness to visit the noncustodial parent is the result of influence by the custodial parent, a mere parroting of the custodial parent's wishes, or a result of lack of knowledge or understanding due to the child's age or not having known the noncustodial

parent, the child's wishes and fears will be strongly discounted. See, *e.g., Radford, supra.* Until a child can affirmatively and independently decide not to have any visitation with the non-custodial parent, the relationship between a child and the noncustodial parent should not be totally severed. See *Smith, supra.* Moreover, aside from the fact that a parent has inherent rights to sustain a relationship with his children, the death of the custodial parent may require the surviving noncustodial parent to perform parental obligations. See, *e.g., Commonwealth, ex rel. Timmons,* v. *Timmons* (1947), 161 Pa. Super. 174, 54 A.2d 75. If all ties were severed between the noncustodial parent and the child, the adjustment at the time of such custody change would be even more difficult for the child. See Annotation (1963), 88 A.L.R. 2d 148, 166.

We do not believe that appellee met her burden of proof in this case. The evidence does not establish that appellant is unfit or that visitation with appellant would harm Michael and Rodney. In fact, the record is void of any such allegations. An affirmative showing must be made by clear and convincing evidence before the parent-child relationship may be forever terminated.

The record does contain the statements made by Michael and Rodney during their psychological evaluation. However, these children have not seen their father for a long time according to their statements, and have not lived with their father for many years. The children's fears for their brother's welfare are unfounded according to Denny's unchallenged testimony. It is likely, therefore, that the children's despisement for their father and unwillingness to visit him are not the result of an independent decision of the children, but more likely due to unsubstantiated fears and the influence and threats of appellee.

Moreover, even if the children's un-willingness to visit their father stemmed from a rational basis, from the record before us we could not conclude that a total denial of visitation was warranted. There was no showing that appellant was unfit or that visitation would cause harm to his children. In this case, absent unrestricted visitation privileges, a supervised or other limited visitation should be ordered. A total severance between appellant and his younger sons should be the last resort.

The judgment of the trial court is reversed, and this cause is remanded for proceedings consistent with this opinion.

*Judgment reversed and
cause remanded.*

CORRIGAN, C.J., concurs.

PARRINO, J., dissents.

PARRINO, J., dissenting. I respectfully dissent. A review of the facts in this case and the applicable case law reveals that the trial court did not abuse its discretion in denying visitation.

The courts have held that while the right of a parent to visit his children is an important one, it is the welfare of the child that is paramount. See *Foster* v. *Foster* (1974), 40 Ohio App. 2d 257 [69 O.O.2d 250]. A trial court is required by statute to base a determination concerning visitation or custody upon what is in the best interests of the children. R.C. 3109.04.

An important consideration in determining the children's best interests is their willingness to visit with the non-custodial parent. As discussed by the majority, where a child is unwilling to see the noncustodial parent and no useful purpose would be served by forcing such visitation, the visitation privilege may be denied. More specifically, in *Smith* v. *Smith* (1980), 70 Ohio App. 2d 87, 89-90 [24 O.O.3d. 100], the court held:

"Age must be a central consideration in determining when a minor's reluctance in visiting with the noncustodial parent is enough to prevent visitation. R.C. 3109.04(A) allows the choice of a minor, who is twelve years of age or older, to become a factor in the determination of what is in the best interests of the child for custody purposes. R.C. 3109.04(A) and the decisions of this court in *Foster* [v. *Foster* (1974), 40 Ohio App. 2d 257 (69 O.O.2d 250)] and *Day* [v. *Day* (Mar. 6, 1979), Franklin App. No. 78AP-733, unreported] recognize the difficulty in compelling a minor of a certain age to visit a parent with whom the child does not want to visit or live. Nevertheless, this court has never failed to protect the noncustodial parent's right to visitation, in the absence of proof that the children, *affirmatively* and *independently,* do not wish to have any visitation." (Emphasis *sic.*)

In the instant case, there is sufficient credible evidence upon which the trial court could conclude that Michael, then age twelve, and Rodney, then age eleven, affirmatively and independently did not wish to have any visitation with their father. Thus, I believe, based on the record in this case, that it would not be in their best interests to compel them to do so. This evidence consists of a psychiatric evaluation conducted by Sue White, Ph.D., at the Cleveland Metropolitan General Hospital, Child Mental Health Division, and the trial court's *in camera* discussion with the children. In her summary, Dr. White states that Michael clearly does not want to have any contact with his father. She goes on to state that, "[h]e demonstrates the intellectual and emotional abilities to be able to make a decision as tough as is being presented to him." She concludes that, "[i]t is recommended that this boy * * * be given his wish and not have to visit the father." In regard to Rodney, Dr. White states that he too has "* * * the intellectual and emotional maturity

to make the visitation decision on his own." In addition to this report, the trial court personally discussed with the children the issue of visitation. At that time, the trial court could consider and evaluate the genuineness of the children's fear and unwillingness to visit their father. In my opinion, this constituted sufficient evidence upon which the trial court could conclude that visitation is not in the best interests of the children, and therefore I would affirm the trial court's judgment.