This appeal arises from a decision of the Mahoning County Court of Common Pleas, Domestic Relations Division, finding Appellant in contempt for failure to comply with Appellee's visitation rights. Appellant argues that there was no clear and convincing evidence that she prevented her daughter from visiting with Appellee. She also argues that a sentence of five days of actual incarceration was unduly harsh for a first-time finding of contempt. For the following reasons, we affirm the decision of the trial court.
The facts of this case are not in dispute, which is evidenced by the fact that Appellee's brief contains a verbatim copy of the factual summary contained in Appellant's Brief.
The parties were married on November 4, 1985. Their only child was born on May 17, 1986. The parties' marriage was terminated by Decree of Dissolution of Marriage on February 19, 1991. Appellant was granted custody of their daughter and Appellee was granted liberal visitation rights.
On June 23, 1997, Appellee filed a Motion for Contempt alleging that Appellant denied him companionship with his daughter on a continuing basis. On October 7, 1997, Appellee filed another Motion for Contempt alleging further violations of his visitation rights and alleging that Appellant was alienating the relationship between himself and their daughter. A hearing on the motions was set for November 19, 1997, but was continued to April 7, 1998.
On February 13, 1998, Appellee filed a third Motion for Contempt. A hearing on this motion was also set for April 7, 1998. The April 7th hearing was again continued, but ultimately took place on April 20, 1998. At the hearing the parties agreed that the matter should be referred to Court's Family Service Division for mediation regarding visitation and for counseling.
On April 30, 1998, the domestic relations magistrate filed his Order with Findings of Fact, ordering that the contempt motions be held in abeyance, that the parties participate in counseling and that the prior visitation order be suspended. The matter was set for review on May 27, 1998.
On May 7, 1998, Appellee filed an appeal of the April 30, 1998, magistrate's order, and the entire matter was set for rehearing before the magistrate on July 13, 1998. The hearing was completed on September 9, 1998. On September 11, 1998, the magistrate filed an order reinstating Appellee's visitation rights but postponing the resolution of the contempt motions.
On November 27, 1998, the magistrate filed a full Magistrate's Decision with Findings of Fact and Conclusions of Law. This decision denied Appellee's June 23, 1997, Motion for Contempt but granted the October 7, 1997, and February 13, 1998, motions. Appellant was sentenced to five days in jail but was afforded the ability to purge her contempt by strictly complying with three conditions: 1) that she abide by all prior court orders regarding visitation, 2) that she encourage and facilitate visitation, and 3) that she pay Appellee $550.00 towards his attorney fees within sixty days. A compliance hearing was set for January 19, 1999.
On December 10, 1998, Appellant filed Objections to the Magistrate's Decision. On March 10, 1999, the Court of Common Pleas, Domestic Relations Division, overruled the objections, affirmed both contempt convictions and adopted the November 27, 1998, Magistrate's Decision. On March 15, 1999, Appellant filed this timely appeal.
On March 19, 1999, Appellant filed a motion with this Court seeking a stay of the judgment. On March 23, 2000, we ordered the motion for stay to be held in abeyance until Appellant filed a memorandum in support of the motion. On May 16, 2000, Appellant finally filed the requested memorandum, but filed this memorandum in conjunction with another case on appeal with this Court. Because the motion has been in abeyance during the pendency of this appeal, we have essentially granted Appellant's motion for stay.
Appellant's first assignment of error states:
 "THE TRIAL COURT ERRED IN FINDING FISHER IN CONTEMPT FOR VISITATION IN THAT SAID DETERMINATION WAS NOT SUBSTANTIATED BY THE EVIDENCE AND THAT THE COURT FAILED TO CONSIDER AND, IN FACT, PREVENTED FISHER THE RIGHT TO PRESENT EVIDENCE OF HER OWN INABILITY TO COMPLY WITH SAID ORDER."
"[A] court has both interest and statutory authority to punish a party for failure to comply with a prior court order." Marden v. Marden
(1996), 108 Ohio App.3d 568, 570. "[U]nless it is void, an order must be obeyed until it is set aside by orderly and proper proceedings." ArthurYoung Co. v. Kelly (1990), 68 Ohio App.3d 287,295.
"`Civil contempt' is defined as that which exists in failing to do something ordered by the court in a civil action for the benefit of the opposing party." Marden, supra, 108 Ohio App.3d at 570. A decision of a court in a contempt proceeding should not be reversed absent abuse of discretion. State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10,11; Delco Moraine Division of General Motors Corp. v. Indus. Commission
(1990), 48 Ohio St.3d 43, 44. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. The evidence must be clear and convincing in order for a court to find a person guilty of civil contempt. Sanchov. Sancho (1996), 114 Ohio App.3d 636, 642.
The contemnor in a civil contempt proceeding must also be given the opportunity to purge the contempt. In re Purola (1991), 73 Ohio App.3d 306,315; Tucker v. Tucker (1983), 10 Ohio App.3d 251, 252.
Appellant argues that Appellee presented contradictory evidence that there were any problems with visitation prior to July of 1997. Appellant argues that the November 27, 1998, Magistrate's Decision, subsequently adopted by the Court of Common Pleas, overruled Appellant's first and second contempt motions because of the allegedly contradictory testimony. Actually, the Magistrate's Decision only overruled the first contempt motion and sustained the second and third motions.
Appellant incorrectly argues that the third contempt motion only alleged a denial of visitation on January 23, 1998. Appellant argues that no evidence was presented that Appellee was entitled to visitation on that day or that he was specifically denied visitation on that day. Appellee's motion in fact alleges that Appellant was, "continually wantonly and willfully denying [Appellee's] companionship for periods since September of 1997." (2/13/1998 Motion for Contempt, p. 2).
Appellant admits that, beginning in September of 1997, she did not insist that her daughter participate in any visitation with Appellee. (Appellant's Brief, p. 7). Appellant argues that it was her daughter who refused to visit Appellee. She believes that, because her daughter was eleven years old at the time, it was the child's choice whether or not to go. Appellant contends that there was ample evidence presented as to her daughter's stubbornness, refusal to attend counseling and feigning illness to avoid visitation. She argues that the wishes of a minor child with respect to visitation and custody should bear great weight with the court. Throughout, Appellant maintains that a residential parent cannot be held in contempt for interference with visitation unless that parent unduly influenced or actively prevented the child from visiting the other parent.
Appellant is correct that a court, when making determinations as to parental rights and responsibilities or visitation, is required in some circumstances to consider the wishes of the child. R.C. §3109.04(F)(1)(b); R.C. § 3109.051(D)(6). Although former R.C. §3109.04 did limit the court to a consideration of the wishes of a child eleven years old or older, the law in effect at the times relevant to the instant case do not contain such a restriction. Regardless of which version of R.C. § 3109.04 or R.C. § 3109.051 was in effect, Appellant's argument is not well taken. Appellant unilaterally denied Appellee's visitation rights rather than going to the court to seek a modification of visitation or a change in the allocation of parental rights and responsibilities. "If she believed further visitation would not be in [the child's] best interest, she should have taken the less drastic step of seeking modification of visitation through the court rather than unilaterally suspending visitation." Huff v. Huff (Oct. 13, 1995), Montgomery App. No. 14823, unreported; see also Snyder v. Snyder
(Aug. 21, 1998), Union App. No. 14-98-22, unreported.
Appellant argues that her daughter's refusal to visit Appellee was based on an incident in April or May of 1997 in which Appellee disciplined her over her use of Appellee's computer system. The child was humiliated by this incident and no longer wished to visit with Appellee. (11/27/98 Magistrate's Order p. 7). Appellant argues that it was her daughter who refused to cooperate or participate in visitation after this incident despite Appellant's efforts to encourage visitation. Appellant cites Foster v. Foster (1974), 40 Ohio App.2d 257, for the proposition that all that is required of a residential parent is that she try to convince a child to visit with the other parent. Appellant's reliance onFoster is misplaced. The issue in Foster was whether a non-custodial parent could have his child support obligations reduced after he had been continuously prevented from exercising his visitation rights under former R.C. § 3109.05. Id. at 268. Foster did not discuss whether a custodial parent could be held in contempt for continuously failing to comply with a visitation order.
Even if we were to agree with Appellant that the law would allow her to avoid contempt by proving that she tried to convince her daughter to visit Appellee and that it was the child's fault Appellee failed to receive visitation, the record before us does not support such an assertion on Appellant's part. The record reveals that Appellant did not encourage her daughter to visit with her father, in fact, the child testified that she was not even told about visits with her father:
 "Q. Did you discuss your visitation with your mother?
"A. No.
 "Q. Does she make you aware of when you are supposed to be going on visitation with your dad?
"A. No."
(9/9/98 Tr. p. 10).
Although the record reflects other testimony which indicates that Appellant did tell her daughter about the visits, conflicts in testimony are left to the trier of fact to resolve. Beekman v. Beekman (1994),96 Ohio App.3d 783, 787. Deference should be given to the trier of fact in its determination of the weight and importance of the evidence.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
A parent's right of visitation is a natural right and should be denied only under extraordinary circumstances. Pettry v. Pettry (1984),20 Ohio App.3d 350, 352. "[I]n the absence of proof showing that visitation with the non-custodial parent would cause physical or mental harm to the children or a showing of some justification for preventing visitation, the custodial parent must do more than merely encourage the minor children to visit the non-custodial parent." Smith v. Smith
(1980), 70 Ohio App.2d 87, 90.
Other than the aforementioned computer incident, Appellant did not present any evidence that her daughter would suffer physical or mental harm if she visited Appellee, nor did she present any other compelling justification for denying visitation. On the contrary, Appellee points to the testimony of Thomas Moore of Mahoning County Childrens Services Board, as well as testimony of Louis Arroyo, the Mahoning County Director of Family Services, revealing that it was safe for the child to visit her father. (9/9/98 Tr. pp. 11, 58-59). Appellee cites the child's own testimony that, other than the single incident in April or May of 1997 concerning Appellee's computer, she had no other reason for refusing to visit her father. (Id. at p. 11).
Appellant further argues that impossibility of compliance is a defense to a contempt charge, citing Olmstead Twp. v. Tioli (1988),49 Ohio App.3d 114. Appellant argues that her daughter's refusal to visit her father made it impossible to comply with the visitation order. Typically, the defense of impossibility to comply with a court order is made in the context of an order to pay money. Courtney v. Courtney
(1984), 16 Ohio App.3d 329, 334; State v. Cook (1902), 66 Ohio St. 566,571. The contemnor has the burden of proof to show an inability to comply with the court order. In re Purola, supra, 73 Ohio App.3d at 315. Given the conflicting testimony and the paucity of evidence explaining the child's refusal to visit Appellee, the trial court was within its discretion to find that Appellant had not met its burden of proof. Additionally, Appellant had the ability to purge herself of the contempt sanction by complying with the court's orders, by following the visitation schedule and by paying Appellee's attorney fees. Thus, Appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "THE SANCTIONS IMPOSED UPON THE RESIDENTIAL PARENT ARE UNJUSTLY PUNITIVE IN NATURE RATHER THAN COERCIVE FOR AN INITIAL FINDING OF CONTEMPT BASED UPON ALL ATTENDANT CIRCUMSTANCES."
Appellant argues that a five-day jail sentence is an unrealistically harsh sentence for a first finding of contempt under the circumstances. A five-day jail sentence is within the statutory limits for a first-time finding of contempt as set forth in R.C. § 2705.05(A)(1), which states: "For a first time offense, a fine of not more than Two Hundred Fifty Dollars, a definite term of imprisonment of not more than thirty days in jail, or both [may be imposed]."
Appellant was found guilty of two counts of contempt. For the second count, the court could have imposed up to sixty days in jail and up to a five hundred dollar fine. R.C. § 2705.05(A)(2). A five-day jail sentence is well within the range set by the statute. This being the case, Appellant's second assignment of error is also without merit.
For all the foregoing reasons we overrule Appellant's assignments of error and affirm the judgment of the trial court in full. Prior stay of execution order issued by this Court on March 31, 2000 is vacated and set aside.
 _____________ WAITE, J.
Vukovich, J., concurs.
Cox, P.J., concurs.