OPINION
Defendant-appellant, Pamela O'Connor (fka Pamela Ware), appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, finding her in contempt of court for violating the trial court's prior visitation order, which requires the parties' minor daughter, Jessica (born in January 1988), to visit with her father, plaintiff-appellee, John Ware.
The parties were divorced in 1995. O'Connor received custody of Jessica, and Ware was granted visitation. On May 30, 2001, Ware filed a motion for contempt, alleging that O'Connor had denied him his visitation with his daughter. The record shows that on several occasions, Ware came to pick up Jessica for his scheduled visitation only to leave without her because Jessica did not want to see her father or go with him. Following a hearing on the motion, the magistrate issued a decision on July 10, 2001, finding O'Connor in contempt of court and awarding Ware make-up visitation and $350 in attorney fees. O'Connor's objections to the magistrate's decision were overruled by the trial court on September 14, 2001. O'Connor appeals and assigns as error that the trial court erred by finding her guilty of contempt of court for denying Waren visitation.[1]
Disobedience to court orders may be punished by contempt. R.C.2705.02(A). This court will not reverse the trial court's contempt finding absent an abuse of discretion. State ex rel. Ventrone v. Birkel
(1981), 65 Ohio St.2d 10, 11. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable, and is more than a mistake of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. Dozer v. Dozer (1993), 88 Ohio App.3d 296, 302.
At the hearing on the contempt motion, a Colerain Township Police Officer, dispatched to O'Connor's house after Jessica had refused to go with her father on a scheduled visitation, testified that despite his efforts, Jessica adamantly refused to go with her father. The officer testified that O'Connor was not preventing visitation between Ware and Jessica and that "she had no control over her daughter as far as making her leave." This time, as on many other occasions, Jessica succeeded in not going with her father.
Jessica testified that she does not want to go with her father because she does not want to be with him. Jessica testified that her mother does not stop her from seeing her father and that she tells her she needs to see her father. Jessica admitted sending a letter to her father on her 13th birthday "advising him [she] no longer wanted to visit."
O'Connor testified that it is important that Ware have a relationship with Jessica. To that effect, O'Connor testified she always encourages and tries to convince Jessica to go with her father. However, when O'Connor tells her "she should go, she needs to go, she needs to spend time with her father," Jessica replies that she wants to spend more time with her friends. O'Connor also testified that Jessica cannot choose not to go with her father. Yet, one evening which Jessica was supposed to spend with her father, Jessica refused to go because she wanted to go skating instead. Despite efforts by O'Connor and a police officer dispatched to O'Connor's house, Jessica ended up not going with her father. Yet, O'Connor allowed her to go skating, but not before she "sat her down and * * * told her how wrong her actions were and how she should have gone with her father."
O'Connor testified that when Jessica ends up not going with her father, O'Connor disciplines her by taking away her phone privileges and by lecturing her. O'Connor admitted, however, that the way she punishes Jessica does not have a lasting effect on her daughter. O'Connor also testified she had not and would not force her daughter to go for a visitation with her father. Yet, O'Connor also testified that, if need be, she would force Jessica to go to school or the doctor's office even if Jessica did not want to. O'Connor acknowledged filing a motion to modify visitation at her daughter's request.
The right of visitation should be denied only under extraordinary circumstances, such as the unfitness of the non-custodial parent or a showing that the visitation would cause harm. Newhouse v. Toler (Nov. 20, 1997), Cuyahoga App. No. 71834, 1997 Ohio App. LEXIS 5192, at *12, unreported. When a court establishes a visitation schedule concerning the minor children of the parties, in the absence of proof showing that visitation with the non-custodial parent would cause physical or mental harm to the children, or a showing of some justification for preventing visitation, the custodial parent must do more than merely encourage the minor children to visit the non-custodial parent. Id. "The burden of proof is on the party contesting the visitation privileges, and absent a showing of extraordinary circumstances, the trial court may fashion any just and reasonable visitation schedule." Pettry v. Pettry (1984),20 Ohio App.3d 350, 352.
There is no evidence in the record that Ware is an unfit parent or that visitation with him would cause harm to Jessica. Jessica simply does not want to go or be with her father. O'Connor claims she has done everything a mother could possibly do to encourage visitation. However, her actions at times speak louder than her words, as illustrated by the skating incident. Although O'Connor punishes Jessica for not going with her father by removing Jessica's phone privileges and by lecturing her, by O'Connor's own admission, those disciplinary measures have no lasting effect on Jessica. Yet, there is no evidence that O'Connor has tried other disciplinary actions. In addition, O'Connor simply refuses to compel Jessica to go on the visitation.
In light of the foregoing, we find that the trial court's decision that O'Connor was in contempt of court for failing to comply with visitation was not unreasonable, arbitrary, or unconscionable. The trial court did not abuse its discretion by finding O'Connor in contempt of court. O'Connor's assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] O'Connor also asserts that the trial court should have granted her objections to the magistrate's decision because, due to an incomplete transcript of the hearing, the trial court did not have the benefit of all of the testimony that was presented to the magistrate. The transcript was incomplete because it had been transcribed from an audio tape recording which, due to human and/or equipment failure, failed to record some of the testimony. O'Connor's assertion is overruled on the basis of Civ.R. 53(E)(3) and App.R. 9. See Summit Mobile Home Park v.Brode (Oct. 16, 1998), Portage App. No. 97-P-0080, unreported. See, also, Thompson v. Thompson (June 16, 1995), Portage App. No. 94-P-0068, unreported.