[Cite as *In re L.R.M.*, 2015-Ohio-4445.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | CASE NO.   CA2014-11-229 |
| L.R.M. | : | O P I N I O N |
|  | : | 10/26/2015 |
|  | : |  |
|  | : |  |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JS2013-0367

Jeremy J. Evans, 306 South Third Street, Hamilton, Ohio 45011, for appellant

R.V., 3154 Moyer Drive, Franklin, Ohio 45005, appellee, pro se

**M. POWELL, P.J.**

{¶ 1}   Appellant, A.F. (Mother), appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting parenting time to appellee, R.V. (Father).

{¶ 2}   Mother and Father are the biological parents of L.R.M. who was born in November 2009.  Mother and Father never married but resided together prior to L.R.M.'s birth.  On February 26, 2009, Father, while extremely intoxicated, broke into the parties' apartment in an effort to get to Mother.  In his rage, Father damaged the apartment, assaulted Mother, held a knife to her throat, threatened to kill her, and sawed off some of

Mother's hair with the knife. Mother fled the apartment and sought refuge in a neighbors' home. Father pursued Mother and entered the neighbors' home, where he caused additional damage, and threatened to kill everyone if he did not find Mother. Unbeknownst to the parties, Mother was pregnant with L.R.M. at the time of the incident.

{¶ 3} As a result of the incident, Father was incarcerated and indicted on single counts of burglary and domestic violence. In March 2009, Mother obtained a five-year civil protection order against Father. In April 2010, following Father's guilty plea to burglary (a second-degree felony) and domestic violence (a fourth-degree felony), the Butler County Court of Common Pleas sentenced Father to five years of community control and ordered him to comply with the Substance Abuse and Mental Illness (SAMI) Program. In 2011, after he established his paternity of L.R.M., Father filed his first motion for parenting time. However, shortly thereafter, Father violated his community control by failing to regularly attend the SAMI Program and was incarcerated in a community corrections center for four months. As a result of his incarceration, Father withdrew his motion for parenting time. Following his release from the corrections center, Father completed his community control early and was discharged. In 2012, Father filed a second motion for parenting time but subsequently voluntarily withdrew it.

{¶ 4} On May 14, 2013, Father filed the instant motion for parenting time. A hearing on the motion was held before a magistrate in April 2014.

{¶ 5} Testimony at the hearing established that L.R.M. has never seen or had contact with Father and does not know him. Mother is married and she and her husband (Stepfather) have a daughter. L.R.M. lives with Mother, Stepfather, and her half-sister. L.R.M. considers Stepfather to be her father; Stepfather holds himself out to the community as L.R.M.'s father. Mother wants Stepfather to adopt L.R.M. and is categorically opposed to any parenting time, visitation, or contact between Father and L.R.M.

{¶ 6} On April 22, 2014, the magistrate granted Father's motion for parenting time. The magistrate found that Father was not an unfit parent and that Mother failed to show visitation with Father would cause harm to L.R.M. Mother filed objections to the magistrate's decision. On October 17, 2014, the juvenile court overruled Mother's objections and adopted the magistrate's decision.

{¶ 7} Mother appeals, raising the following four assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE COURT ABUSED ITS DISCRETION BY LIMITING WHAT CONSTITUTES AN EXTRAORDINARY CIRCUMSTANCE, CONTRARY TO CASE LAW.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE COURT ABUSED ITS DISCRETION BY FAILING TO ANALYZE THE EVIDENCE PRESENTED THROUGH THE PROPER LEGAL SEQUENCE.

{¶ 12} Assignment of Error No. 3:

{¶ 13} THE COURT ABUSED ITS DISCRETION BY CONFUSING WHICH PARTY HAD THE BURDEN OF PROOF AT EACH STAGE OF THE CASE.

{¶ 14} Assignment of Error No. 4:

{¶ 15} THE COURT ABUSED ITS DISCRETION BY FAILING TO MAKE A FINDING OF LACK OF FITNESS OF THE FATHER OR A LIKELIHOOD OF HARM TO THE CHILD, CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16} A juvenile court is vested with broad discretion in determining the visitation rights of a nonresidential parent. *Otten v. Tuttle*, 12th Dist. Clermont No. CA2008-05-053, 2009-Ohio-3158, ¶ 13. As a result, an appellate court will not reverse a trial court's decision granting or denying visitation rights absent an abuse of discretion. *Id.* An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Id.* An abuse of discretion may be found when the trial court "'applies the wrong legal standard,

misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Musson v. Musson*, 11th Dist. Trumbull No. 2013-T-0113, 2014-Ohio-5381, ¶ 15, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.).

{¶ 17} In granting Father's motion for parenting time, the juvenile court first reviewed applicable statutory factors under R.C. 3109.051(D), then relied upon a decision of the Eighth Appellate District. *See Pettry v. Pettry*, 20 Ohio App.3d 350 (8th Dist.1984). In *Pettry*, the Eighth Appellate District held that "[a] noncustodial parent's right of visitation with his children is a natural right and should be denied only under extraordinary circumstances, such as unfitness of the noncustodial parent or a showing that visitation with the noncustodial parent would cause harm to the children." *Id.* at syllabus. The appellate court further held that "absent a showing of extraordinary circumstances, the trial court may fashion any just and reasonable visitation schedule." *Id.* at 352. In the case at bar, the juvenile court found that there were no extraordinary circumstances to deny parenting time to Father as Father was not an unfit parent and Mother failed to establish that visitation with Father would cause harm to L.R.M.

{¶ 18} In her first assignment of error, Mother argues that although the juvenile court properly cited *Pettry*, "the controlling case with regard to * * * a non-custodial parent's rights to visitation," the court misinterpreted the decision's legal standard by limiting what is an extraordinary circumstance to the only two examples listed in *Pettry*. Mother asserts that Father's violent crime against Mother and his subsequent incarceration constitute extraordinary circumstances under *Pettry* and support the denial of parenting time to Father.

{¶ 19} Because we find that the juvenile court applied the wrong legal standard when it applied the "extraordinary circumstances" standard set forth in *Pettry* in determining whether to grant parenting time to Father, the juvenile court's decision granting Father's motion for parenting time must be reversed.

{¶ 20} *Pettry* was decided on November 19, 1984. The "extraordinary circumstances" standard set forth in *Pettry* was subsequently clarified in 1989 in a decision from the Tenth Appellate District. *See In re Hall*, 65 Ohio App.3d 88 (10th Dist.1989). In *Hall*, the Tenth Appellate District held that a noncustodial parent's unfitness and the harm to a child caused by visitation were only two suggested extraordinary circumstances; a noncustodial parent's imprisonment for a crime of violence was also an extraordinary circumstance. *Id.* at 90.

{¶ 21} At the time *Pettry* was decided, the only statutory provision relating to visitation was found in former R.C. 3109.05, which provided in relevant part: "The court may make any just and reasonable order or decree permitting the parent who is deprived of the care, custody, and control of the children to visit them at the time and under the conditions that the court directs." *See Hasey v. Hasey*, 7th Dist. Mahoning No. 90 C.A. 137, 1991 WL 256483 (Dec. 3, 1991). By the time *Hall* was decided, the statute had been amended in only one minor aspect.[1]

{¶ 22} "In 1990, the General Assembly eliminated any mention of visitation in R.C. 3109.05 and adopted R.C. 3109.051, which specifically and in detail addresses the granting of parental *visitation* rights." (Emphasis sic.) *Braatz v. Braatz*, 85 Ohio St.3d 40, 44 (1999). "Thus, since 1990," R.C. 3109.051 "clearly governs decisions as to visitation" and "is the applicable statute for determining visitation." *Id.* R.C. 3109.051(D) lists 16 factors a magistrate or a court must consider in determining whether to grant parenting time to a parent.

{¶ 23} R.C. 3109.12 governs parenting time and visitation rights where a mother is unmarried. The statute, which became effective in 1990, provides in relevant part that:

---

1. Former R.C. 3109.05 was amended in 1987 and read, in relevant part: "The court may make any just and reasonable order or decree permitting any parent who is deprived of the care, custody, and control of the children to visit them at the time and under the conditions that the court directs." *See Hasey v. Hasey*, 7th Dist. Mahoning No. 90 C.A. 137, 1991 WL 256483 (Dec. 3, 1991).

(A)   If a child is born to an unmarried woman and if the father of the child has * * * been determined in an action under Chapter 3111. of the Revised Code to be the father of the child, the father * * * may file a complaint requesting the court of common pleas of the county in which the child resides to grant [him] reasonable companionship or visitation rights with respect to the child.

(B)   The court may grant the companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the companionship or visitation rights is in the best interest of the child.   In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code.

The marriage or remarriage of the mother or father of a child does not affect the authority of the court under this section to grant the natural father * * * reasonable companionship or visitation rights with respect to the child.

In turn, R.C. 3109.051(C) requires a trial court to consider all relevant factors, including the 16 factors listed in R.C. 3109.051(D), in determining whether to grant parenting time to a parent under R.C. 3109.12.

{¶ 24} We find that the enactment of R.C. 3109.12 and 3109.051 in 1990 supplanted the "extraordinary circumstances" standard applied in *Pettry* and *Hall* and their progeny.  In fact, in 2009, we found that the "extraordinary circumstances" standard was inconsistent with the language of R.C. 3109.12:

We note that under R.C. 3109.051(A), * * * a court *may* make an order of parenting time for the father of a child born to an unmarried woman upon the father's request, if such an order is in the best interest of the child.

Our decision *In the Matter of Nichols*, [12th Dist. Clermont No. CA97-11-102, 1998 WL 295937 (June 8, 1998)], dealt with a request for parenting time from a father of a child born to an unmarried woman.  The case discussed both R.C. 3109.12 and R.C. 3109.051, but * * * stated that a nonresidential parent's visitation rights should only be denied under extraordinary circumstances.  Both statements as applied to a situation of a father seeking parenting time with a child of an unmarried woman are not congruent with the language of R.C. 3109.12(A)

and (B). Therefore, we will no longer follow *Nichols* to the extent that its language and holdings are inconsistent with statutory law dealing with a father seeking parenting time with the child of an unmarried woman.

(Emphasis sic.) *In re P.G.*, 12th Dist. Clermont No. CA2008-12-109, 2009-Ohio-6747, ¶ 10, fn. 2.

{¶ 25} We therefore hold that the "extraordinary circumstances" standard set forth and applied in *Pettry* and its progeny has been superseded by R.C. 3109.12 and 3109.051 and no longer applies when determining parental visitation rights. With the passage of R.C. 3109.051, the General Assembly enacted a comprehensive procedural and substantive framework within which to resolve parental visitation disputes. Under R.C. 3109.051, there are no longer "extraordinary circumstances," but rather, only circumstances that are considered in the weighing of the various R.C 3109.051(D) factors. *Pettry* and its progeny involved a split analysis. Under R.C. 3109.051, there is a single analysis which involves the weighing of the circumstances under the R.C. 3109.051(D) factors to determine whether parenting time is in the child's best interest pursuant to R.C. 3109.12.[2]

{¶ 26} In the case at bar, while the juvenile court went over the 16 factors in R.C. 3109.051(D), the court clearly resolved the case and granted Father's motion for parenting time solely on the ground there were no extraordinary circumstances under *Pettry* to deny parenting time to Father. In this regard, the juvenile court found, "The underlying law regarding this issue is set forth in Pettrey v. Pettrey," and then quoted the language in *Pettry*

---

2. R.C. 3109.12 applies to the situation of parents who were never married to each other and provides in relevant part that "[t]he court may grant the * * * visitation rights requested * * * if it determines that the granting of * * * visitation rights *is in the best interest of the child.*" (Emphasis added.) R.C. 3109.12(B). By contrast, R.C. 3109.051 applies to parents of children who are issue of their parents' marriage and provides in relevant part that parenting time shall be granted to the noncustodial parent "unless the court determines that *it would not be in the best interest of the child* to permit that parent to have parenting time with the child." (Emphasis added.) R.C. 3109.051(A). Because this case involves parents who were never married to each other, the "in the best interest of the child" standard of R.C. 3109.12, as opposed to the "not in the best interest of the child" standard of R.C. 3109.051, is applicable.

that a noncustodial parent's right to visit with his or her child should be denied "only under extraordinary circumstances, such as unfitness of the non-custodial parent or a showing that visitation with the non-custodial parent would cause harm to the children." The juvenile court then determined that Father was not unfit and that Mother failed to prove that visitation with Father would harm L.R.M.

{¶ 27} Because the juvenile court applied the wrong legal standard in granting Father's motion for parenting time, we find the court abused its discretion. *See Evans v. Dayton Power & Light Co.*, 4th Dist. Adams No. 03CA763, 2004-Ohio-2183; *see also Wands v. Maple Hts. City School Dist. Bd. of Edn.*, 8th Dist. Cuyahoga No. 76198, 2000 WL 1222007 (Aug. 24, 2000) (notwithstanding the abuse-of-discretion standard, an appellate court retains the authority to correct a trial court's application of an incorrect rule of law). Accordingly, the juvenile court's decision granting Father's motion for parenting time is reversed and the matter is remanded to the juvenile court for further consideration under the appropriate legal standard, that is, R.C. 3109.12 and 3109.051(D). Mother's first assignment of error is accordingly sustained insofar as is consistent with this opinion.

{¶ 28} At this juncture, we note that while the juvenile court went over the 16 factors listed in R.C. 3109.051(D) and made factual findings under applicable statutory factors, the court neither made conclusions of law nor weighed the factors against one another in determining whether it was in the best interest of L.R.M. to grant Father parenting time. That is, the juvenile court did not make a best interest determination pursuant to the R.C. 3109.051(D) factors.

{¶ 29} A trial court "must make a specific finding that it is in the child's best interest" to grant visitation or parenting time, "and the record should, in the least, provide some indication that the statutory factors in R.C. 3109.051(D) were considered in making this determination." *In re Davis*, 12th Dist. Warren No. CA99-07-078, 2000 WL 253662, *3 (Mar. 6, 2000);

*Cavagnaro v. Cavagnaro*, 12th Dist. Warren No. CA2012-02-012, 2012-Ohio-4024 (trial court's failure to provide its reasoning in connecting the R.C. 3109.051[D] factors to its decision regarding parenting time prevents appellate court from reviewing trial court's decision). Here, the juvenile court based its ruling upon a finding that there were no "extraordinary circumstances" under *Pettry* sufficient to deny Father parenting time with L.R.M. Thus, on remand, the juvenile court is instructed to explain its reasoning and to follow statutory precepts under R.C. 3109.12 and 3109.051. *Cavagnaro* at ¶ 12.

{¶ 30} In her second, third, and fourth assignments of error, Mother argues the juvenile court misapplied *Pettry* in that (1) the juvenile court failed to determine whether Mother proved the existence of any extraordinary circumstance at all; (2) the juvenile court abused its discretion by not placing the burden of proof upon Father as to whether visitation was in the best interest of L.R.M.; and (3) the juvenile court's findings that Father is not an unfit parent and that Mother failed to prove visitation would cause harm to L.R.M. are both against the manifest weight of the evidence. However, as our analysis of the first assignment of error requires a reversal of the juvenile court's decision, Mother's remaining arguments are moot and will not be addressed. *Denlinger, Rosenthal & Greenberg, LPA v. Cohen*, 12th Dist. Warren No. CA2012-03-019, 2012-Ohio-4774, ¶ 27.

{¶ 31} Judgment reversed and remanded.

S. POWELL and RINGLAND, JJ., concur.