[Cite as *Trent v. Taylor*, 2017-Ohio-7189.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Tommy L. Trent, Jr., | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 17AP-89 |
| | | (C.P.C. No. 12JU-12213) |
| Jill Taylor, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 10, 2017

**On Brief:** *Saia & Piatt, Inc.,* and *Jon L. Jensen*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

TYACK, P.J.

{¶ 1} Plaintiff-appellant, Tommy L. Trent, Jr., appeals from the January 12, 2017 "DECISION AND ENTRY" of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch. The decision and entry granted defendant-appellee, Jill Taylor's, October 21, 2016 objections/motion to set aside magistrate's order of October 7, 2016; denied Trent's May 25, 2016 motion for temporary orders; granted Taylor's June 14, 2016 motion for attorney fees; granted in part Taylor's June 22, 2016 motion for an order of drug testing of Trent; and granted in part Taylor's June 14, 2016 motion for an order directing Trent to terminate health insurance coverage, or, in the alternative, motion to produce health insurance card and allocation of health related expenses for the minor children. The effect of the decision and entry of the trial court is that there is currently no order for supervised visitation between Trent and his minor children.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2}   The present case began in September 2012 when Trent filed a complaint with the Franklin County Juvenile Court to establish parentage of the couple's three minor children.

{¶ 3}   By way of background, the parties never married and have three children together: O.A.T., born April 28, 2001; J.L.T., born December 23, 2002; and R.V.T., born June 30, 2005.  According to Trent, he struggled with substance abuse and was verbally abusive to Taylor throughout the relationship.  (Feb. 14, 2013 Trent Aff. at ¶ 2.)  Trent admittedly has a long history of cocaine abuse.  (Jan. 4, 2017 Tr. at 23-24.)  As a result of his years of alcohol and drug use, Trent developed heart problems, received a heart defibrillator, and takes medication to stabilize his condition.  (Feb. 14, 2013 Trent Aff. at ¶ 3.)  He now receives Social Security Disability Income payments.  *Id.* at ¶ 5.

{¶ 4}   According to Taylor, Trent was violent and subjected her to emotional, physical, and sexual assaults, as well as beating the youngest child when he went to the bathroom in his diapers.  (Feb. 14, 2013 Taylor Aff. at ¶ 5, 41.)  The parties eventually separated in 2007, but there were intermittent periods where Taylor allowed Trent visitation and contact with the children.  *Id.* at ¶ 44, 50.  Taylor obtained a civil protection order against Trent in May 2012, which permitted Trent to have phone contact with the children.  *Id.* at ¶ 64, 65.  After actions that Taylor believed violated the protective order, Taylor filed criminal charges against Trent and obtained a second civil protective order in September 2012 in which Taylor was named the sole legal custodial and residential parent of the children.  *Id.* at ¶ 73.  (Feb. 14, 2013 Taylor Aff., Ex. D.)

{¶ 5}   After much litigation, the parties entered into a final agreed judgment entry on September 9, 2014 which provided for a graduated schedule of parenting time between Trent and the children contingent upon clean drug tests.  Included in the order was the following:  Taylor to remain residential and custodial parent of the three minor children; a 90-day program of weekly drug screens for Trent, with a no show for a urine screen equaling a positive screen;  upon completion of 45 days of negative screens, Trent to be allowed parenting time supervised by his girlfriend for the next 45 days;  in the event of a no show or positive drug screen, Trent to have supervised visitation at Welcome to Our Place two times per week for two hours per week;  upon successful completion of the 90-

day drug screening program, a graduated plan of supervised visitation leading to commencement of Franklin County Local Domestic Court Rule 22 Parenting Time.

{¶ 6} Upon approval and adoption by the trial court, all pending motions were dispensed with. One month later, Trent reactivated the case on October 10, 2014 by filing a motion for contempt against Taylor alleging Taylor was refusing to permit Trent parenting time with the children. More litigation ensued with Trent alleging that Taylor was preventing telephone contact with the children. (*See* May 8, 2015 Mot. for Order of Contempt.) Some motions were voluntarily dismissed, apparently because Trent failed to complete the drug testing program set forth in the agreed order, and was expelled from the Welcome to Our Place supervised visitation facility*. (See* May 29, 2015 Mot. of Defendant Jill Taylor for an Award of Legal Fees; Aug. 31, 2015 Aff. of Jill Taylor at ¶ 8.)

{¶ 7} On May 19, 2015, Trent filed a motion to reallocate parental rights and responsibilities and a motion for the appointment of a guardian ad litem ("GAL") different from the current GAL. The motion to appoint a new GAL was denied by the magistrate on August 11, 2015.

{¶ 8} The parties agreed to a September 8, 2015 interim magistrate's order concerning telephone contact with the children two days a week, encouraging working with a family counselor towards reunification, and allowing Trent to communicate with the children regarding their activities. Other interim orders followed concerning GAL fees and reunification counseling. On November 3, 2015, under an agreed interim magistrate's order, the parties agreed to follow through with reunification counseling with Dr. David Lowenstein, a counselor selected by Trent, and to follow all the recommendations of the therapist.

{¶ 9} In January 2016, Taylor filed a motion for an in-camera interview for the magistrate to interview the children regarding their wishes for the allocation of parental rights and responsibilities. It does not appear that the motion has been ruled upon.

{¶ 10} Trent filed a motion on May 25, 2016 for a temporary order granting supervised visitation. Taylor filed a motion on June 22, 2016 for an order to drug test Trent, a motion to allocate health care expenses on June 14, 2016, and a motion for attorney fees on June 14, 2016.

{¶ 11} In a magistrate's order dated July 21, 2016, the parties agreed to address additional issues concerning reunification counseling with Dr. Lowenstein, individual counseling for the children, and Skype communication between Trent and the children.

{¶ 12} The parties submitted affidavits in support of their positions on the pending issues on August 12, 2016. Trent asserted that Taylor had repeatedly attempted to hinder or limit his contact with his children. (Aug. 12, 2016 Trent Aff. at ¶ 2.) He indicated that he was maintaining sobriety. *Id.* at ¶ 24. Trent stated that he had not been able to see his children other than in reunification counseling with Dr. Lowenstein, and his last session was in March 2016. *Id.* at ¶ 3. Trent indicated that he tried to schedule an appointment with Dr. Lowenstein, but was denied by Lowenstein's office. *Id.* Trent stated that the sessions with Dr. Lowenstein were not fruitful. *Id.* at ¶ 10. Trent was strongly opposed to continuing any counseling with Dr. Lowenstein. *Id.* at ¶ 19. Trent suggested the parties engage in reunification counseling with Greggory A. Stephens, a social worker in Delaware, Ohio who accepts the parties' insurance. *Id.* at ¶ 17. Trent expressed a desire for supervised visitation at the C.A.R.E.-F.I.T. Center in Marion, Ohio. *Id.* at ¶ 5. Trent also sought to communicate with his children via Skype. *Id.* at ¶ 21-23. If drug testing were ordered, Trent asked that Taylor be assessed the costs associated with it, as Trent averred there was no basis for such testing. *Id.* at ¶ 24.

{¶ 13} Taylor indicated that it was Trent who chose to discontinue counseling with Dr. Lowenstein. (Aug. 12, 2016 Taylor Aff. at ¶ 7.) Taylor requested that the court deny the motion for an order of parenting time and direct the parties to continue working with Dr. Lowenstein and to continue to follow his recommendations. *Id.* at ¶ 13. Attached to Taylor's affidavit was the affidavit of Dr. Lowenstein indicating that Trent had not contacted his office to schedule an appointment after the last session with the children. (*Id.* at ¶ 7; Taylor Aff., Ex. A at ¶ 4.) Dr. Lowenstein stated: "Tommy last participated in a session with the children at my office on March 25, 2016. Since then Tommy has not contacted my office to schedule any other sessions. That three month gap presents as a significant disruption to any progress that the family previously made." (Lowenstein Aff. at ¶ 4.)

{¶ 14} Dr. Lowenstein further stated:

> It has been my experience and observation that Jill has not interfered with the counseling or been a source of delay. Jill has complied with all requests regarding the scheduling of appointments and she has timely delivered the children to my office each time. I cannot attribute any lack of progress to Jill. Again, the only cancellation of an appointment that I can recall is the aforementioned cancellation of the first appointment that resulted from Tommy's excessive tardiness.
>
> Based upon my work with the family to date, it is my opinion that supervised parenting time is not appropriate at this time. Although Tommy may want to commence supervised parenting time with the children, I do not believe it would be appropriate for any of the children. I am offering this opinion because I am aware that the parties' agreed order requires them to follow my feedback.

(Lowenstein Aff. at ¶ 5-6.)

{¶ 15} An email from the GAL was also attached as an exhibit to Taylor's affidavit. In the email, the GAL stated as follows:

> I am in agreement with Ms. Taylor's position regarding the out of town supervised visitation. Perhaps if the hair follicle testing were done by Mr. Trent and the result came back negative for all substances of potential abuse, I might reconsider.

(Aug. 12, 2016 Taylor Aff., Ex. B.)

{¶ 16} Taylor also submitted evidence of Trent's missed drug screens and positive results for cocaine metabolite during the testing period of July 1, 2014 through January 16, 2016. (Aug. 12, 2016 Taylor Aff., Ex. C.) Taylor noted that Trent had never successfully completed 90 consecutive days of clean drug tests. (Taylor Aff. at ¶ 18.) She asked the court to require Trent to submit to a hair follicle drug test and subsequent random urine testing at Trent's expense. (Taylor Aff. at ¶ 11, 20.)

{¶ 17} Taylor was opposed to the court ordering Skype communication with the children because the children do not presently speak to their father during telephone calls and dread participating in them. (Taylor Aff. at ¶ 27.) Taylor stated: "Their relationships

are so strained that forcing additional forms of contact on them *without addressing the underlying issues through Dr. Lowenstein as contemplated in our agreed orders* risks doing further damage to their relationships." (Emphasis sic.) *Id.* Taylor also contended that Skype communication would present a financial hardship. *Id.* at ¶ 28. Taylor asked for an award of legal fees because Trent has filed motion after motion and because Trent has refused to produce a copy of the health insurance card, and such card had to be subpoenaed by Taylor's attorney. *Id.* at ¶ 33, 34.

{¶ 18} Both Taylor and Trent were in favor of individual counseling for the children. (Trent Aff. at ¶ 20; Taylor Aff. at ¶ 21.) Taylor indicated that two of the children were receiving counseling through an organization that provides school-based services at no cost to her, and that she intended to enroll the youngest child now that he is entering middle school. (Taylor Aff. at ¶ 21-25.)

{¶ 19} The magistrate issued a temporary order on October 7, 2016. The magistrate noted that the GAL had not provided an affidavit or pre-trial recommendation report. The magistrate noted Trent's history of drug use, and that there was currently no supervised visitation in place. The magistrate reiterated that the parties had agreed to participate in reunification counseling with Dr. Lowenstein and to follow his recommendations. While Dr. Lowenstein was of the opinion that supervised parenting is not appropriate at this time, the magistrate noted that Dr. Lowenstein provided no basis for this opinion. Nor did either party or Dr. Lowenstein present any evidence that supervised parenting time would cause an adverse impact on the children.

{¶ 20} The temporary order granted Trent's motion of May 25, 2016 for a temporary order granting supervised visitation; granted in part Taylor's motion of June 22, 2016 for an order of drug testing; granted in part Taylor's motion of June 14, 2016 to produce health card and allocate expenses; and, denied Taylor's motion of June 14, 2016 for attorney fees.

{¶ 21} The magistrate ordered the following:

> Hair follicle drug testing for Trent, costs to be allocated based on the results of the test;
>
> Twice monthly random urine drug screens for Trent, cost to be split between the parties;

Reunification counseling with Greggory Stephens, MSW, LISW-S in Delaware, the parties to follow the recommendations of the counselor;

Continued individual counseling for the minor children;

Twice weekly phone and Skype communication between Trent and the children with Trent to reimburse Taylor if any overage on Taylor's monthly data plan;

Taylor to provide Trent with information regarding extracurricular activities, schedules, names of coaches, and contact information;

Trent and his wife to be allowed to attend the children's activities and contact coaches, but Trent and his wife not to be allowed to interfere with the children's participation in their activities;

Trent to provide medical insurance and insurance card for the children and the parties to split any extraordinary medical expenses equally.

Trent to be allowed supervised parenting time two times a month, alternating between C.A.R.E.-F.I.T. Center in Marion, Ohio and Buckeye Ranch in Columbus, Ohio, and no use of illegal controlled substances prior to or during such visits.

{¶ 22} On October 21, 2016, Taylor, proceeding pro se, filed objections to the magistrate's order of October 7, 2016. Taylor also filed a motion to stay the trial in the matter set for October 24, 2016.

{¶ 23} Taylor objected on the basis that the magistrate's order was contrary to the recommendations of the GAL and Dr. Lowenstein, and not in the best interest of the children. Taylor also objected to having to pay any portion of Trent's drug tests because it was Trent's behavior that necessitated the testing. Taylor objected to a new counselor being selected without her being given the opportunity to provide input, plus the long travel time involved in commuting to Delaware for counseling sessions. Taylor also objected to the supervised visits in Marion, Ohio as that necessitated a two-hour round trip of driving and that it went against the recommendation of Dr. Lowenstein. Taylor objected to the denial of her request for attorney fees as she asserted her large legal bills

were the result of Trent manipulating the system by filing motion after motion causing her to incur large bills and having to take days off work.

{¶ 24} On October 25, 2016, Trent filed a motion to strike the objections, arguing the proper course of action was for Taylor to file a motion to set aside the magistrate's order pursuant to Civ.R. 53(D)(2)(b), as opposed to objections to a magistrate's decision as provided in Civ.R. 53(D)(3)(b)(i).  Trent also argued the motion to stay should be stricken as it was filed outside the ten-day time limit in which she could have requested that the magistrate's order be set aside.

{¶ 25} After a number of continuances, the trial court conducted a hearing on January 4, 2017 on Taylor's objections to the magistrate's order.  Trent was represented by counsel, Taylor appeared pro se, and the GAL was also present.  The court noted that the objections should have been filed as a motion to set aside pursuant to Juv.R. 40(D)(2)(b) but denied the motion to strike, stating that "the court prefers to address matters based on their merits rather than on procedural defects."  (Jan. 12, 2017 Decision and Entry at 1.)

{¶ 26} The court heard arguments from both parties and the GAL.  The GAL indicated that the children were getting older, and it has become more difficult to insist they do things they are adamantly opposed to doing. (Tr. at 15.)  The GAL noted that Trent desired a relationship with his children but he had not taken the recommended parenting classes to learn how to parent teenagers.  (Tr. 16.)  The GAL noted that Trent appeared to be clean and sober currently, but there was a long history that the children had never been able to address with their father.  *Id.*  The GAL also stated that there has been no proof of complete sobriety until mid 2016, and she believed his full-time sobriety was recent.  (Tr. at 19, 20.)

{¶ 27} The GAL was of the opinion that Taylor had done everything that she could do to parent the children effectively, including sports and school.  (Tr. at 16.)  The GAL stated that the children felt that they were being forced to do things they really did not have the energy for as they were teenagers who were trying to reach maturity and dealing more with their peer groups than with their parents.  *Id.*  The GAL stated that the children had met with Greggory Stephens, and they were hoping for some kind of recommendation from this therapist.  (Tr. at 17.)  The GAL noted that with all the litigation and

interruptions, there has not been a consistent development of a relationship. *Id.* The GAL indicated a concern that if the new therapist did not believe it was appropriate to make the children go through this, there would be more litigation, and the kids "have had it." *(*Tr. at 18-19.) The GAL did not see a solution to the problem. (Tr. at 19.)

{¶ 28} The trial court found that Trent had failed to comply with the terms of the parties' "Final Agreed Judgment Entry" and was attempting to relitigate the issues with little regard to what was best for the children. (Jan. 12, 2017 Decision and Entry at 7.) In particular, the trial court found that Trent has yet to demonstrate via drug testing, 90 consecutive days of sobriety. *Id.* at 8. The trial court found Trent's assertion not credible that he has been clean and sober for five years, but African American men test positive for cocaine for years after they have stopped using due to their slow metabolism. *Id.* at 8-9.

{¶ 29} The trial court reviewed the parties' affidavits and found insufficient evidence to warrant the magistrate's issuance of a temporary order. *Id.* at 7. The trial court found that it was error for the magistrate to disregard the professional opinion of Dr. Lowenstein that supervised visitation was not warranted at this time. *Id.* at 8. Even if supervised visitation were eventually recommended by a counselor and ordered by the court, the trial court was of the opinion that the travel time to the C.A.R.E.-F.I.T. Center in Marion, Ohio would cause unnecessary travel time and expense for Taylor and the children, and that burden should be borne by Trent. *Id.* at 8. The trial court ordered the parties to continue in reunification counseling, and if they could not agree on which counselor to use, the GAL was to make the decision. *Id.* at 9-10.

{¶ 30} The trial court granted Taylor's motion for attorney fees in the amount of $4,000. *Id.* at 10. The trial court found that Trent's failure to comply with the parties' "Agreed Final Judgment Entry" of September 9, 2014 has been the impetus for the litigation. *Id.* In addition, Trent's unilateral decision to add the children to his wife's health insurance coupled with the refusal to provide Taylor with an insurance card, caused Taylor to incur significant legal fees. *Id.*

{¶ 31} Prior to the unilateral decision to add the children to Trent's wife's insurance, Taylor had been able to have health care coverage for the children through CareSource and thus incurred no out-of-pocket medical expenses. *Id.* at 11. After reviewing the situation regarding the children's health insurance, the trial court ordered

Trent to pay 75 percent and Taylor to pay 25 percent of the children's co-payments, deductibles, and extraordinary medical expenses. *Id.*

## II. ASSIGNMENTS OF ERROR

{¶ 32} Trent filed a timely appeal from the January 12, 2017 judgment, and assigns the following as error:

> [I.] The trial court erred and abused its discretion in denying plaintiff-appellant any parenting time with the parties' minor children.
>
> [II.] The trial court erred and abused its discretion in awarding defendant-appellee attorney fees.
>
> [III.] The trial court erred and abused its discretion in ordering plaintiff-appellant to pay 75% and defendant-appellee 25% of the minor children's uninsured medical expenses.
>
> [IV.] The trial court erred and abused its discretion in considering defendant-appellee's untimely "objections" to the magistrate's decision as defendant-appellee failed to show good cause for her untimely filing.

## III. STANDARD OF REVIEW

{¶ 33} Parenting time and visitation rights are governed by statute. R.C. 3109.12 provides for parenting time and visitation rights where the mother is unmarried. Under R.C. 3109.12(B), the court may grant parenting time or visitation rights if it determines that the granting of the parenting time or visitation rights is in the best interest of the child. In considering whether to grant reasonable parenting time rights, the trial court must consider all relevant factors, including the factors set out in R.C. 3109.051(D). *J.V.C.-N. v. M.P.D.*, 10th Dist. No. 11AP-581, 2012-Ohio-1418, ¶ 37.

{¶ 34} "A juvenile court is vested with broad discretion in determining the visitation rights of a nonresidential parent." *In re: L.R.M.*, 12th Dist. No. CA2014-11-229, 2015-Ohio-4445, ¶ 16. On appeal, our standard of review is whether the trial court abused its discretion in granting or denying parenting time or visitation rights. *Id.*, citing *Otten v. Tuttle*, 12th Dist. No. CA2008-05-053, 2009-Ohio-3158, ¶ 13. An abuse of discretion may be found when a trial court " 'applies the wrong legal standard, misapplies the correct

legal standard, or relies on clearly erroneous findings of fact.' " *Musson v. Musson*, 11th Dist. No. 2013-T-0113, 2014-Ohio-5381, ¶ 15, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.). An abuse of discretion may be found where the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## IV. DISCUSSION

### A. Parenting Time

{¶ 35} In his first assignment of error, Trent argues it was error for the trial court to deny him any parenting time with the minor children. This is not what the court actually ordered. The effect of the January 10, 2017 decision and entry of the trial court is that there is *currently* no order for supervised visitation between Trent and his minor children. However, the parties are still under the agreed interim order of November 3, 2015 that requires the parties to follow all recommendations of the therapist. As the trial court noted in its decision and entry of March 10, 2017 at fn. 1:

> At the time the November 3, 2015 Order was issued, the parties were meeting with Dr. Lowenstein. At the January 4, 2017 hearing in front of this court, the parties had met with Counselor Greggory Stephens at least once. In its January 12, 2017, [decision and entry] this court ordered that [] if the parties cannot agree on which counselor to continue to use, the Guardian ad Litem shall make said selection, upon consulting with her clients, the children.

{¶ 36} Thus, a path for reunification still exists for Trent should he engage in reunification counseling as ordered by the court and continue to follow the recommendations of the therapist.

{¶ 37} Trent appears to be arguing that it was an abuse of discretion for the trial court to consider the evidence in the record, including the recommendation of the therapist selected by Trent, that supervised visitation was not warranted at this time. The evidence also showed that Trent failed to comply with the terms of the Final Agreed Judgment Entry of September 9, 2014, which provided for a graduated schedule of parenting time between Trent and the children contingent upon clean drug tests. The GAL indicated that there had been no proof of complete sobriety until mid-2016. The

court did not find Trent's assertion credible that African American men test positive for years after they quit using cocaine.

{¶ 38} The court also heard from the GAL for the need for "baby steps" to repair the relationship, that the children had concerns that they were not being heard in the matter, and that the only way there could be a return to normalcy would be with the assistance of a therapist.

{¶ 39} In reaching its decision, the trial court was not denying Trent any parenting time with his children. The trial court was requiring the parties to abide by the agreed orders that had already been entered in the case and to follow the recommendations of the reunification counselor. We can find no abuse of discretion in this determination. The first assignment of error is overruled.

### B. Attorney Fees

{¶ 40} In the second assignment of error, Trent contends that the trial court abused its discretion in awarding attorney fees to Taylor.

{¶ 41} Juv.R. 40(B) allows a trial court to award attorney fees if the court finds the award equitable. In making that determination, the court may consider the conduct of the parties, party-created impediments to the discovery process, the parties' income and assets, difficulty in ascertaining or evaluating the parties' income and assets, and any other relevant factors the court deems appropriate. Juv.R. 40(B)(2).

{¶ 42} Trent argues that the trial court erred in awarding fees to Taylor because the attorney affidavit was incomplete, and there was no evidence of his hourly rate, nor was there evidence of the income and expenses of the parties.

{¶ 43} A review of the trial court's decision reveals that the trial court considered that Trent's failure to comply with the agreed judgment entry had been the impetus for the continued litigation and multiple motions filed by Trent.

{¶ 44} Also, Trent's wife unilaterally added the children to her health insurance policy and refused to provide Taylor with an insurance card despite multiple requests from Taylor and the GAL. This caused Taylor to incur significant legal fees to acquire access to the insurance card.

{¶ 45} The trial court noted a disparity in income between the households, but was unable to ascertain the amount of money Trent was making as a chef in addition to his

Social Security Disability Income. Taylor's affidavit contained information about the disparity in incomes, and the trial court apparently took that into consideration in making its award. Taylor had to take out a loan in order to pay her legal fees, and her counsel withdrew during the pendency of the case because she was unable to stay current with her legal bills. Trent has maintained legal counsel throughout the duration of the lengthy case.

{¶ 46} Taylor averred that she had incurred over $40,000 in legal fees since the inception of this case. A review of the affidavit of counsel submitted in support of the motion for attorney fees shows that his hourly rate was $200 per hour and a significant portion of the $4,000 awarded by the trial court related to the fees incurred because of the refusal to provide the health insurance card.

{¶ 47} The trial court's decision reflects careful consideration consistent with Juv.R. 40, and the court's findings are reasonable. We discern no abuse of discretion.

{¶ 48} The second assignment of error is overruled.

### C. Medical Expenses

{¶ 49} In his third assignment of error, Trent argues that the trial court abused its discretion by ordering him to pay 75 percent and Taylor to pay 25 percent of the children's uninsured medical expenses. Trent argues that Taylor did not claim in her motion or affidavit that she had incurred unpaid medical expenses for the children. Trent also claims that the trial court failed to comply with statutory requirements for a child support order under R.C. 3119.30.

{¶ 50} Taylor filed a motion on June 14, 2016 entitled "Motion of Defendant, Jill Taylor, for an Order Directing Plaintiff to Terminate Health Insurance Coverage or, in the Alternative, Motion to Produce Health Insurance Card and Allocate Health Related Expenses for the Minor Children." In her memorandum in support, Taylor asserted that she incurred various out-of-pocket costs associated with the children being placed on Trent's wife's policy, and was currently paying 100 percent of the ordinary and extraordinary medical expenses of the children. (June 14, 2016 Mot. at 3, 4.)

{¶ 51} At the hearing before the trial court, it was determined that there exists no support order for the children. (Jan. 4, 2017 Tr. at 8.) The trial court found that Taylor had previously had health care coverage through CareSource for the children in which she

incurred no out-of-pocket medical expenses. Trent's wife unilaterally added the children to her employer-sponsored health insurance plan causing Taylor to incur uncovered medical expenses that would have been covered by CareSource. (Jan. 12, 2017 Decision and Entry at 11.) As discussed above, the trial court noted the disparity between the parties' household incomes.

{¶ 52} With no support order and the unilateral decision to place the children on Trent's wife's insurance, the trial court did not abuse its discretion in granting the motion to allocate health related expenses of the minor children.

{¶ 53} The third assignment of error is overruled.

### D. Untimely Objections

{¶ 54} In his fourth assignment of error, Trent argues the trial court abused its discretion in considering Taylor's objections to the magistrate's order that were untimely.

{¶ 55} As noted above, Taylor was unable to pay her attorney and was proceeding pro se at the time she filed her objections. The trial court elected to address Taylor's objections as a motion to set aside the magistrate's decision pursuant to Juv.R. 40(D)(2)(b) and to excuse the untimeliness of the motion. A motion to set aside a magistrate's order must be filed no later than 10 days after the order is filed. *Id.* Objections to a magistrate's decision are due within 14 days of the magistrate's decision. Juv.R. 40(D)(3)(b). Taylor filed her objections on October 21, 2016, 14 days after the October 7, 2016 order of the magistrate. The trial court noted in its decision that it preferred to address the matter on its merits rather than on any procedural defects.

{¶ 56} In general, pro se litigants are held to the same rules, procedures, and standards as litigants represented by counsel. *Goodrich v. Ohio Unemp. Comp. Review Comm.,* 10th Dist. No. 11AP-473, 2012-Ohio-467, ¶ 25. However, " '[i]t is true that a court may, in practice, grant a certain amount of latitude toward pro se litigants.' " *Id.* quoting *Robb v. Smallwood*, 165 Ohio App.3d 385, 2005-Ohio-5863, ¶ 5, (4th Dist.); *Millennia Hous. Mgt. Ltd. v. Johnson*, 8th Dist. No. 96854, 2012-Ohio-1044, ¶ 10.

{¶ 57} Here, the trial court granted Taylor a certain amount of leeway in converting her objections to a motion to set aside and excusing the untimeliness of the same. We note that had objections been the proper vehicle for Taylor to raise her issues before the court, her filing would have been timely under the rules. We find no abuse of

discretion in the trial court's decision to hear the case on its merits and to consider Taylor's filing.

{¶ 58} The fourth assignment of error is overruled.

## V. CONCLUSION

{¶ 59} Based on the foregoing, Trent's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch is affirmed.

*Judgment affirmed.*

BRUNNER and HORTON JJ., concur.

_____