[Cite as *In re L.S.*, 2020-Ohio-3408.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| L.S. | : | CASE NO. CA2019-06-049 |
| | : | O P I N I O N<br>6/22/2020 |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2018 JI 24796

Nadeem Quraishi, 4938A Wunnenberg Way, West Chester, Ohio 45069, for appellant

Mother, 198 Redbird Drive, Loveland, Ohio 45140, pro se

**S. POWELL, P.J.**

{¶ 1} Appellant ("Father") appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, denying his complaint for parenting time with his daughter, L.S. For the reasons outlined below, we affirm the juvenile court's decision.[1]

{¶ 2} Father and appellee ("Mother") have one child together, L.S., born on October

---

1. Mother did not file an appellee's brief. Pursuant to App.R. 18(C), when an appellee fails to file a brief, "in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

11, 2016. Although Mother's pregnancy was planned, Father and Mother were never married. Mother has two other children, an 11-year-old girl and a 14-year-old boy, who were the biological children of her now deceased husband.

{¶ 3} Beginning in 2015, Father and Mother had maintained an on-again-off-again romantic relationship. However, during the summer of 2018, Father and Mother broke up. Mother has since taken a new boyfriend whom she has been dating for approximately one year. Mother, Mother's boyfriend, L.S., and Mother's two other children, all live together in a three-bedroom mobile home. Father, who over the past several years either lived with Mother or his aunt, now lives in a duplex with his 24-year-old son.

{¶ 4} On November 8, 2018, Father filed a complaint for parenting time with L.S. The juvenile court held a hearing on Father's complaint on May 28, 2019. During this hearing, the juvenile court heard testimony from both Father and Mother. Mother, who appeared pro se, testified that she did not believe granting Father parenting time was in L.S.'s best interest. Explaining why she believed Father should not be granted parenting time, Mother testified that Father "drinks a lot," "[i]t's always alcohol," and "when he don't drink he takes Nyquil to sleep." Mother testified that this makes her "fear that if [L.S.] wakes up in the middle of the night [that Father] will not hear her."

{¶ 5} Mother also testified that Father "was not there for [L.S.'s] birth because of alcohol." Mother further testified that Father "came and went and he walked out about four or five times a week" shortly after L.S. was born because "he drinks all the time." When asked what she meant by this, Mother testified:

> [Father] was drunk every time. He would just walk out and say, 'I'm done.' I would never walk out on any of my children no matter how difficult things would get. But that's what he's always done. He… everywhere he's lived he's always depended on other people. He's never had a place of his own until now and that's just to throw it in my face.

- 2 -

{¶ 6} Mother additionally testified that Father has never taken care of L.S. by himself and "never been alone with her." Mother instead testified that she had "always been present" and "always been there" when Father was around L.S. both before and after she and Father broke up. When asked if he had spent time alone with L.S., Father acknowledged that he had been alone with L.S. just "[a] little bit," but "not much." According to Father, this includes times when he and L.S. would take walks or play games he had bought for her.

{¶ 7} Mother also testified that she did not think Father was "capable of taking [L.S.] overnight or even for a few hours. I fear for her." This is because, according to Mother:

> What if he has a couple of drinks and something horrible happens. God forbid. What if it is too late for me to do anything? I don't want to wait until it's too late. I'm just saying alcohol has been a big issue in this whole relationship, he calls relationship.

{¶ 8} Continuing, Mother testified that she had obtained a domestic violence civil protection order ("DVCPO") against Father shortly after L.S.'s second birthday. The DVCPO, which does not expire until later this year on November 30, 2020, names L.S. as a protected person. Explaining what caused Mother to seek a DVCPO against Father, Mother testified that Father was calling her incessantly and "threatening" her over the phone. As Mother testified:

> [Father] was, he would not stop. He would blow my phone up all into the night. I mean I would get up for school with my kids and he wouldn't stop. He would keep [L.S.] awake in the crib because the phone would not stop. I leave my phone on just for emergencies, if my family had to get a hold of me. I am alone with my kids. I leave my phone on. And he says he never sleeps. * * * And I was scared and he would always, he would always say that he's there, he's watching. He sees everything. He hears everything.

{¶ 9} Mother further testified that Father would send her threatening, harassing, and menacing text messages and social media postings. As Mother testified:

[T]he texting got out of control. I mean he literally had me in tears telling me things. I was like, 'You feel better? 'No, I don't.' Called me a whore, a slut, every name in the book. It's not right.

{¶ 10} Mother testified that she had received another message from Father "where he said 'Moto soris' (sic) which means death." Mother testified that these messages got "really bad" when Mother started dating her boyfriend. This, according to Mother, made Father mad because "he couldn't come and go as he pleased and couldn't talk to me the way he did because my boyfriend * * * would not allow it."

{¶ 11} Mother also testified that Father had at one time gotten within "two inches" of her face "pretty much spitting" at her because she refused to move in with him. Mother testified that there were other times where she had "been scared for [her] life because [Father's] been so drunk." This includes an incident where Father "tied Christmas lights to his bumper" and then "pulled out of the driveway in front of [her] children ripping them out of a tree." Mother testified that Father had also "ruined Christmas for [her] kids" when he "backed over [the family] Christmas trees in the yard." Mother testified that Father "has even ruined an Easter."

{¶ 12} When asked again if she believed Father should be granted parenting time with L.S., Mother testified:

At this point [L.S.] does not know him. I don't think it's in her best interest to have anything to do with him right now. Because still he's bashing me on social media which it's obvious that after about 7:00 p.m. each evening he just starts posting these things which means he is drinking. He gets drunk and he does this. I don't think I want my daughter around this. I don't. I did not have a problem with him having a relationship with his daughter but at this point, I, I don't want even that. And it's hard for me to say.

{¶ 13} Mother also testified that "nobody knows what [Father] is like behind closed doors. [Father] is a charmer in front of people but behind closed doors he is awful. And I thought alcohol just made it 10 times worse."

- 4 -

{¶ 14} Concluding, Mother testified:

> I'm just, I'm tired. My children, I don't want them to grow up and be around this. I don't think it is good on [L.S.]. I don't think she should grow up to hear him bashing me and threatening me. I don't think, I don't think it's in her best interest. I just want the best for her and my kids. We're all tired of this. We want to move on.

{¶ 15} On June 4, 2019, the juvenile court issued a decision denying Father's complaint for parenting time with L.S. In so holding, the juvenile court noted that it had "serious concerns" regarding Father's alcohol consumption as testified to by Mother. Albeit the most recent occurred in 2015, this includes evidence that Father had four prior convictions for operating a vehicle while under the influence of alcohol. The juvenile court also noted that it was concerned with Father's "transient lifestyle" given "Father's current address is the first home in which he has lived independently, and has assumed financial responsibility therefore, for several years." This is the case despite Father being 49 years old.

{¶ 16} This was in addition to the juvenile court's concerns over the "threatening and menacing" calls, text messages, and social media posts Father had directed toward Mother. As the juvenile court noted, this caused a "complete breakdown in communication and cooperation between the parties" that ultimately resulted in Mother obtaining a DVCPO against Father that named L.S. as a protected person. Therefore, although noting that it had "virtually always" found it to be in a child's best interest to spend time with both of his or her parents, the juvenile court determined that this was "certainly" one of the "very few cases" where "it is not in the best interest of the minor child to have a Court-ordered regular schedule of parenting time with the Father" until, at the very least, "the expiration of the aforementioned [DVCPO]."

{¶ 17} Father now appeals the juvenile court's decision, raising the following single

assignment of error for review.

{¶ 18} THE TRIAL COURT ERRED IN DENYING FATHER'S COMPLAINT FOR PARENTING TIME.

{¶ 19} In his single assignment of error, Father argues the juvenile court erred by denying his complaint for parenting time with his daughter, L.S.  We disagree.

{¶ 20} "R.C. 3109.12 governs the establishment of parenting time rights and companionship or visitation rights for children born out of wedlock." *King v. King*, 12th Dist. Madison No. CA2015-03-009, 2016-Ohio-2681, ¶ 40.  Pursuant to R.C. 3109.12(A), "if a child is born to an unmarried woman and if the father has either formally acknowledged or been determined to be the father, the father may file a complaint requesting the court grant him reasonable parenting time with the child." *In re P.G.*, 12th Dist. Clermont No. CA2008-12-109, 2009-Ohio-6747, ¶ 8.  "R.C. 3109.12(B) permits a [juvenile] court to grant parenting time rights to the acknowledged father of a child born to an unmarried woman if it is in the best interest of the child." *Jamison v. Massey*, 5th Dist. Muskingum No. CT-2018-0027, 2018-Ohio-3034, ¶ 11.  "In considering whether to grant reasonable parenting time rights, the [juvenile] court must consider all relevant factors, including the factors set out in R.C. 3109.051(D)." *Trent v. Taylor*, 10th Dist. Franklin No. 17AP-89, 2017-Ohio-7189, ¶ 33, citing *J.V.C.-N. v. M.P.D.*, 10th Dist. Franklin No. 11AP-581, 2012-Ohio-1418, ¶ 37.  "R.C. 3109.051(D) includes such factors as the interaction of the child with parents, siblings, other persons, the child's adjustment to home, school, and community, the health and safety of child, and the mental and physical health of all parties." *In re P.G.* at ¶ 10.

{¶ 21} "[A] juvenile court is vested with broad discretion in determining the visitation rights of a nonresidential parent." *Otten v. Tuttle*, 12th Dist. Clermont No. CA2008-05-053, 2009-Ohio-3158, ¶ 13.  "The [juvenile] court's discretion must be exercised in a manner which protects the best interest of the child." *In re Cassidy v. Wagner*, 12th Dist. Brown No.

CA2011-03-006, 2011-Ohio-5868, ¶ 23, citing *In re A.M.*, 12th Dist. Butler No. CA2005-11-492, 2006-Ohio-5986, ¶ 8. "We review a decision regarding parenting time for an abuse of discretion." *Pirkel v. Pirkel*, 9th Dist. Lorain No. 13CA010436, 2014-Ohio-4327, ¶ 9. An abuse of discretion is more than an error of law or judgment; it requires a finding that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 22} Father argues the juvenile court erred by denying his complaint for parenting time with L.S. since there was insufficient evidence to prove he was an unfit parent. Father supports this claim by noting his testimony alleging he was an "involved and hands-on" parent who had "made efforts" to protect L.S. and "had a positive relationship with" L.S. Father also supports this claim by alleging he was merely in a "transition" period following his breakup with Mother rather than living a "transient lifestyle" as the juvenile court found. Father further supports this claim by alleging his alcohol consumption is not as bad as Mother alleged since he "denied drinking to excess" and only "admitted to having a couple of beers after work." This is in addition to Father's claim that there was no evidence of any "conflict" with L.S. nor any evidence that he "threatened or posed a danger" to L.S., thereby making Mother's concerns about "what *could* happen" if Father could not hear L.S. wake up at night "due to alcohol" nothing more than "pure speculation." (Emphasis sic.)

{¶ 23} However, despite Father's claims, the issue is not whether Father is an unfit parent. The issue is also not whether Father has a good, positive relationship with L.S., whether Father was merely in "transition" following his breakup with Mother, or even whether Father's alcohol consumption is as bad as Mother claims. The juvenile court's paramount concern is instead what is in L.S.'s best interest. This is because, as noted above, "[t]he [juvenile] court's discretion must be exercised in a manner which protects the best interest of the child." *In re Cassidy,* 2011-Ohio-5868 at ¶ 23, citing *In re A.M.*, 2006-

Ohio-5986 at ¶ 8. This holds true even when it goes against the nonresidental parent's wishes for his or her child.

{¶ 24} After having the opportunity to hear testimony from both Father and Mother, the juvenile court found this was "certainly" one of the "very few cases" where "it is not in the best interest of the minor child to have a Court-ordered regular schedule of parenting time with the Father." Given the fact that L.S. is a protected person in the DVCPO Mother obtained against Father that does not expire until later this year on November 30, 2020, we find no abuse of discretion in the juvenile court's decision. Just as the juvenile court found, Father cannot circumvent the DVCPO's restrictions imposed upon him by filing a complaint for parenting with time with L.S. until, at the very least, "the expiration of the aforementioned [DVCPO]." Therefore, while it may be in L.S.'s best interest for Father to have parenting time with her at some point in the future, because the juvenile court did not abuse its discretion by denying Father's complaint for parenting time with L.S. that is now on appeal, Father's single assignment of error lacks merit and is overruled.

{¶ 25} Judgment affirmed.

RINGLAND and PIPER, JJ., concur.